## A96A0974. THE STATE v. BRANNAN.
(474 SE2d 267)

Judge Harold R. Banke.

The Gwinnett County Solicitor charged Robert G. Brannan with reckless conduct, a misdemeanor. Brannan's three-year-old child, who was visiting at his father's home, was accidentally shot in the foot by a rifle the child found under the bed. The accusation alleged that Brannan "consciously disregard[ed] a substantial and unjustifiable risk that his act of leaving an unattended and loaded rifle in the common play area of the child would cause harm to another. . . ." Brannan moved to suppress the weapon seized by the officer during a search of the bedroom and to exclude evidence of several statements he made to a police officer during the follow-up investigation of the shooting. The trial court granted those motions, and the State appeals. *Held*:

1. *Suppression of the Weapon.* We may reverse the trial court's suppression of the rifle only if its decision was "clearly erroneous." In reviewing the record to make that determination, we must accept the trial court's ruling on disputed facts and defer to its judgment on the credibility of witnesses. *State v. Davis*, 261 Ga. 225, 226-227 (404 SE2d 100) (1991).

The evidence developed on the motion showed that a Snellville police officer came to Brannan's house in response to a 911 call. Officer Wellmaker found Brannan in the living room at the front door, applying a rag to his son's bleeding foot. After checking on the child, Wellmaker asked Brannan "where the weapon was"; he responded that it was "upstairs in the bedroom" under the bed. Brannan also told the officer the gun had discharged and shot the child in the foot. Concerned with making sure the weapon was safe and would not discharge again, Wellmaker went upstairs and found the stock of the rifle protruding from under the bed. He removed a jammed bullet and the clip, replaced the weapon where he found it, and returned downstairs to speak to Brannan and report to a superior officer who had just arrived on the scene. Officer Wellmaker asked for Brannan's house keys and told him he would "secure the residence" while Brannan went to the hospital with his son. After Brannan left, Wellmaker and two other officers returned to the bed-

room and seized several items of evidence, including the weapon.[1]

The rifle represented evidence of the crime charged, and it appeared in plain view to the officer after he entered the bedroom. An officer who is lawfully in a place and sees in plain view evidence relating to a crime, or instrumentalities of a crime, may seize that evidence. *Galbreath v. State*, 213 Ga. App. 80, 82 (2) (443 SE2d 664) (1994). The important question is whether the officer was lawfully in the bedroom when he seized the weapon. The trial court found Brannan did not consent to the officer's presence in the bedroom and ruled that no emergency situation justified his going there. We find this latter conclusion clearly erroneous.

"[A]n exigent circumstance which does justify the warrantless entry of a [bedroom in a] private home is the officer's reasonable belief that such action is a necessary response on his part to an emergency situation." *Coker v. State*, 164 Ga. App. 493, 496 (5) (297 SE2d 68) (1982). See *Michigan v. Tyler*, 436 U. S. 499, 509 (98 SC 1942, 56 LE2d 486) (1978) (officers may enter a burning building to put out a blaze and, while inside, seize evidence found in plain view). In *Coker*, supra, the Court found exigent circumstances allowed officers to enter a house when they reasonably feared for the safety of a child inside. Similarly, in *State v. Scott*, 176 Ga. App. 887, 889 (2) (339 SE2d 276) (1985), exigent circumstances allowed police arresting a suspect inside a home to make a cursory search of the house based on a reasonable belief that another occupant of the house might present an armed threat. See also *Maryland v. Buie*, 494 U. S. 325, 336-337 (110 SC 1093, 108 LE2d 276) (1990), upholding such a "protective sweep" to detect any immediate danger.

Although we review police actions from the standpoint of a hypothetical "reasonable" officer, we must measure those actions from the foresight of an officer acting in a quickly developing situation and not from the hindsight of which judges have benefit. *State v. Crisanti*, 220 Ga. App. 705, 710 (470 SE2d 314) (1996). See *United States v. Rodgers*, 924 F2d 219, 222 (11th Cir. 1991) (test whether exigent circumstances exist is an objective one).

In this case, the evidence showed without contradiction that after Officer Wellmaker entered Brannan's house in response to the emergency call and realized a weapon had discharged, he promptly inquired about the gun and immediately took steps to disarm the rifle. This police officer, like the officer in *United States v. Doe*, 819 F2d 206, 210 (9th Cir. 1987), was faced with a situation in which a rifle had fired and injured a victim. The victim remained in the house, and emergency medical personnel were arriving to treat the

---

[1] On appeal, the State takes exception only to the court's suppression of the rifle.

victim. As in *Doe*, this officer acted reasonably in conducting a warrantless search for the rifle, which represented a " 'substantial risk of harm to the persons involved.' " (Citation omitted.) Id. We find the officer was, therefore, entitled to seize the weapon after he disarmed it and the trial court's ruling that this weapon presented no emergency is clearly erroneous. Compare *State v. Williams*, 212 Ga. App. 164, 165-166 (2) (441 SE2d 501) (1994), in which the defendant presented evidence challenging the officer's assertion of an emergency situation.

We also reject any contention that the officer's failure to seize the weapon when he first found it prevented him from returning to retrieve it after Brannan and his injured child went to the hospital. The transcript of the motion to suppress hearing shows clearly that Officer Wellmaker was involved in an ongoing investigation of the incident. Between the time he secured the weapon and the time he seized it, the officer reported to his superior, checked the progress of emergency medical personnel, and obtained house keys from Brannan. Under the circumstances, his subsequent seizure of the weapon constituted a mere continuation of his first search for it. See *Michigan v. Tyler*, 436 U. S. at 511 (upholding warrantless search made valid by exigency but delayed by circumstances); *Hatten v. State*, 253 Ga. 24, 25 (2) (315 SE2d 893) (1984) (upholding lengthy search as "prompt" under the circumstances).

2. *Exclusion of Brannan's Statements*. The trial court suppressed three statements Brannan gave to another Snellville police officer because Brannan was not advised of his *Miranda* rights prior to his making any of these statements. See *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

"For *Miranda* to apply a person must be taken into custody or otherwise deprived of his freedom of action in any significant way. [Cits.]" *Hardeman v. State*, 252 Ga. 286, 288 (1) (313 SE2d 95) (1984). As with Brannan's motion to suppress the weapon, we apply a "clearly erroneous" standard of review. *Harrell v. State*, 204 Ga. App. 738, 740 (3) (420 SE2d 631) (1992). To determine whether Brannan's statements were custodial, we apply an objective standard and determine whether a reasonable person in his situation would have believed he was physically deprived of his freedom of action in a significant way. Id. at 739-740. We address the circumstances of each statement separately.

(a) *Hospital Interview*. Sgt. Mitchell went to the hospital and found Brannan there. She either asked him to step outside with her or accompanied him outside while he smoked a cigarette. She told Brannan that she had consulted with the district attorney to determine if his acts constituted a felony and had been informed they did not. She also told him that no criminal charges were pending but

that the matter was under investigation. She denied threatening him in any way, denied telling him he was not free to leave, and believed he spoke to her voluntarily. After Officer Mitchell interviewed Brannan about the shooting, she told him she would contact him in a few days to make a formal statement at the station, and they parted.

We find the trial court's exclusion of this interview clearly erroneous, for we do not believe a reasonable person would have considered himself "in custody" under these circumstances. Brannan spoke with the officer in a public place, outside a hospital. The officer never told Brannan he was under arrest or not free to go and in fact informed him no charges had been made against him. The mere fact that Mitchell approached Brannan to ask him questions does not bring *Miranda* into play. Under these circumstances, a reasonable person would have felt free to decline the officer's request for an interview. *Conner v. State*, 205 Ga. App. 564, 566 (3) (422 SE2d 872) (1992).

(b) *Telephone Interview*. Approximately two weeks after the accident, Officer Mitchell and Brannan spoke by phone. She asked him several questions about his purchase of the rifle and set up an appointment for him to come speak with her at the station. Brannan did not show up for that appointment. The facts of this interview create no issue of custodial interrogation, and the trial court erred in granting Brannan's motion to exclude this statement. Id.

(c) *Station Interview*. After losing contact with Brannan for several weeks, Officer Mitchell again contacted Brannan and asked him to come speak with her at the station at his convenience. He came alone, and they met in the station conference room. She explained she was still investigating the case but that he was under no obligation to speak to her and was free to leave. He indicated he understood. After the interview, Mitchell informed Brannan she would prepare a report and submit it to the Solicitor's office. He then left.

"*Miranda* warnings are not required simply because questioning takes place in a building containing jail cells. [Cits.]" *Hardeman*, 252 Ga. at 288 (1). Brannan came to the station voluntarily. He was informed he did not have to speak to the officer and was told he could leave. The trial court erred in excluding this statement. This case presents a clearer example of a non-custodial interview than the facts of *State v. Walker*, 204 Ga. App. 1 (418 SE2d 384) (1992), in which we found the trial court erred in excluding from evidence an interview made under similar circumstances. Unlike the authorities in *Walker*, Officer Mitchell specifically told Brannan he was free to leave and was not required to answer any questions. See id. at 3 (Cooper, J., dissenting).

The trial court's ruling appears based in part on the fact that Officer Mitchell believed Brannan had committed a crime. Whether

she secretly intended to charge him with a crime is immaterial to a determination of whether he was in custody, except to the extent she communicated her intent to him. *Stansbury v. California*, 511 U. S. ___ (114 SC 1526, 1529-1530, 128 LE2d 293) (1994). Here, although Officer Mitchell suspected Brannan's actions constituted a crime, she repeatedly told him he was not charged with any offense. "[T]he proper inquiry is whether the individual was formally arrested or restrained to the degree associated with a formal arrest, not whether the police has probable cause to arrest. [Cit.]" *Hodges v. State*, 265 Ga. 870, 872 (2) (463 SE2d 16) (1995); compare *Shy v. State*, 234 Ga. 816, 821 (218 SE2d 599) (1975) (based on federal case law which appears to contradict *Stansbury*).

*Judgment reversed. Pope, P. J., and Andrews, J., concur.*

DECIDED JULY 30, 1996.

*Gerald N. Blaney, Jr., Solicitor, Richard E. Thomas, Allison L. Thatcher, Assistant Solicitors*, for appellant.
*James C. Watkins*, for appellee.