## A00A2354. LINDSEY v. THE STATE.
### (543 SE2d 117)

MIKELL, Judge.

Curtis Lindsey was indicted for the offenses of rape, battery, false imprisonment, and terroristic threats. Following a jury trial, Lindsey was convicted of battery, false imprisonment, and simple assault, as a lesser included offense of rape. The court directed a verdict of acquittal on the terroristic threats charge. Lindsey filed a motion for new trial, which was denied. This appeal followed. We affirm.

Viewed in the light most favorable to the verdict, the evidence shows that the victim, Lindsey's former girlfriend, voluntarily accompanied Lindsey to his apartment on March 5, 1998, at approximately 8:30 p.m. According to the victim's testimony, however, when she tried to leave, he stopped her. The victim and Lindsey began to argue because she did not want to have sex with him. As the argument escalated, Lindsey punched the victim in the face with his fist and cut her pants off with scissors.

The victim testified that Lindsey allowed her to call her family to tell them she would be home later. The victim spoke with her mother, Thelma Foster, who testified that the victim said she wanted to come home, but Lindsey would not permit her to leave. According to Foster, the victim sounded scared and was crying. Foster testified that she could hear Lindsey's voice in the background. When Foster asked her daughter the telephone number to Lindsey's apartment, the line went dead.

Lindsey had unplugged the telephone. Afterward, the victim testified, he tied her up with a cord, gagged her with a towel, placed

tape across her mouth, and put her in a closet. The victim testified that she heard Lindsey ask someone on the telephone how he could "get rid of a body." She was terrified.

In the meantime, after the telephone call from her daughter ended abruptly, Foster contacted her other daughter, and they joined additional family members to drive downtown in search of Lindsey's apartment. After failing to locate the apartment building, the victim's family went to a federal police precinct to report their suspicions that the victim was being held against her will.

Officer A. C. Huntley of the City of Atlanta Police Department testified that he met the victim's family at the federal police precinct. Based on the family's description of Lindsey's residence, Officer Huntley was able to locate Lindsey's apartment building. He spoke with the desk clerk and observed the victim's name on the sign-in sheet in the lobby. The officer proceeded to Lindsey's apartment and knocked on the door. Receiving no response, Officer Huntley returned to the lobby, where the desk clerk had already contacted the building manager.

The victim testified that after Lindsey allowed her to leave the closet and untied her, they heard a knock at the door. Lindsey told her that it was the police, but he did not open the door. The victim testified that Lindsey told her to lie on the bed, and that he proceeded to have nonconsensual sexual intercourse with her. She further testified that Lindsey placed a pair of scissors against her nipples and threatened to cut them off and stab her, and that she did not scream because she was afraid. After the defendant had sex with the victim, there was a knock on the bedroom door.

Officer Huntley testified that the building manager arrived and opened the front door to Lindsey's apartment. Officer Huntley knocked on the two inner doors. The officer testified that Lindsey opened one of the doors, and the victim quickly exited the room. Both Lindsey and the victim were partially clothed. The victim was visibly upset, and the officer observed bruises on her shoulders, arms, and head. The victim told him that she had been attacked. Officer Huntley put Lindsey in the back of his police car to await the arrival of the sex crimes unit. The officer did not search the apartment at that time.

Investigator Michael Pulliam testified that he arrived at Lindsey's apartment building at approximately 1:30 a.m. on March 6, 1998. After speaking with the victim, Investigator Pulliam escorted her to Lindsey's apartment to retrieve her belongings. Upon entering Lindsey's bedroom, the investigator realized that it was a crime scene and ordered the investigation unit to photograph the room. Investigator Pulliam observed a pair of cut-up pants, tape, and an extension cord, and the victim gave him a pair of scissors. After seiz-

ing the evidence and securing the crime scene, Investigator Pulliam placed Lindsey under arrest.

1. First, Lindsey enumerates as error the court's denial of his motion to suppress the evidence acquired through the warrantless search of his apartment. Lindsey argues that Officer Huntley's first entry into the apartment and Investigator Pulliam's subsequent entry were both unlawful, and, thus, the evidence seized was inadmissible. OCGA § 17-5-30 (a) (1). We disagree.

> When reviewing a trial court's decision on a motion to suppress, the court's responsibility is to ensure that there was a substantial basis for the decision. The evidence is construed most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous.

*Carthern v. State*, 238 Ga. App. 670-671 (1) (519 SE2d 490) (1999). See also *State v. David*, 269 Ga. 533, 535 (1) (501 SE2d 494) (1998); *State v. Davis*, 261 Ga. 225, 226 (404 SE2d 100) (1991); *State v. Brannan*, 222 Ga. App. 372 (474 SE2d 267) (1996). So viewed, we conclude that the trial court's decision was not clearly erroneous.

First, we agree with the trial court that Officer Huntley's entry into the apartment was justified by the existence of exigent circumstances. "An exigent circumstance which does justify the warrantless entry of a private home is the officer's reasonable belief that such action is a necessary response on his part to an emergency situation." *Brannan*, supra, 222 Ga. App. at 373, citing *Coker v. State*, 164 Ga. App. 493, 496 (5) (297 SE2d 68) (1982). It has been repeatedly held that reasonable concern for a victim's welfare justifies a warrantless entry. *Johnson v. State*, 272 Ga. 468, 470 (2) (532 SE2d 377) (2000); *Carthern*, supra, 238 Ga. App. at 671; *Brannan*, supra, 222 Ga. App. at 373-374. In the case sub judice, Officer Huntley had a reasonable concern that the victim was being held against her will, based on information provided by her mother and on the fact that she had signed in as a guest at the apartment building but had not signed out. Therefore, the court did not err in finding that the first entry into the apartment was not unlawful.

Next, Lindsey argues that Investigator Pulliam's subsequent entry into the apartment and seizure of evidence were unlawful; however, we find this argument to be without merit.

At the suppression hearing, Investigator Pulliam testified that Lindsey gave him permission to enter the apartment with the victim to retrieve her personal belongings. When the investigator entered the bedroom, he observed a pair of pants, an extension cord, and tape in plain view. The victim pointed out the scissors used by Lindsey to

cut off her pants and threaten her. The police officers photographed the room and seized the evidence. "An officer who is lawfully in a place and sees in plain view evidence relating to a crime, or instrumentalities of a crime, may seize that evidence. The important question is whether the officer was lawfully in the bedroom when he seized the [evidence]." (Citation omitted.) *Brannan*, supra, 222 Ga. App. at 373.

The record shows that Investigator Pulliam entered Lindsey's bedroom based on the defendant's consent. Courts determine the voluntariness of consent by examining the totality of the circumstances, including whether the accused was advised of his constitutional rights and the prolonged nature of questioning. *Weeks v. State*, 206 Ga. App. 431, 433 (425 SE2d 421) (1992). In this case, Investigator Pulliam testified that he advised Lindsey that he was not under arrest and read him his *Miranda* rights before speaking to him. According to Investigator Pulliam, Lindsey told him that the incident was "just a domestic thing," and that the officer could take the victim to the apartment to retrieve her belongings.

"We must accept the trial court's ruling at a suppression hearing as to the credibility of an officer's testimony regarding a defendant's consent to a search, unless that ruling is clearly erroneous." *Randolph v. State*, 246 Ga. App. 141, 146 (538 SE2d 139) (2000). Therefore, we conclude that Investigator Pulliam lawfully entered the apartment based on Lindsey's consent.

Furthermore, we find that the seized evidence was properly discovered under the plain view doctrine. " 'Plain view' is best understood not as an independent exception to the Warrant Clause but simply as an extension of whatever prior justification might exist for an officer's access to an object or situation." *Galbreath v. State*, 213 Ga. App. 80, 82 (2) (443 SE2d 664) (1994). Because the investigator was lawfully in Lindsey's apartment based on his consent, and the items were in plain view and recognizable as evidence, the officer properly seized the evidence at issue. Id. at 83. Therefore, the trial court did not err in denying Lindsey's motion to suppress.

2. Next, Lindsey argues that the court erred in admitting evidence of prior difficulties between himself and the victim. At trial, the victim's sister testified that she had observed Lindsey hold the victim against her will on four occasions and slap the victim once. She also testified that Lindsey would telephone the victim up to 30 times an hour. The victim testified that Lindsey hit her on numerous occasions, called her "bitches" and "whore," and threatened to kill her sister.

Lindsey argues that his right to due process was violated because the prosecution did not provide him with ten days advance notice of its intention to present evidence of prior difficulties between

the defendant and the victim, as required by Uniform Superior Court Rules 31.1 and 31.3.

In *Wall v. State*, 269 Ga. 506, 509 (500 SE2d 904) (1998), however, the Supreme Court held that USCR 31.1 and 31.3 should not be applied to evidence of prior difficulties between a defendant and a victim. Under *Wall*, evidence of the defendant's prior acts toward the victim is admissible as "evidence of the relationship between the victim and the defendant and may show the defendant's motive, intent, and bent of mind in committing the act against the victim which results in the charges for which the victim is being prosecuted." Id. Thus, the trial court did not err in admitting evidence of prior difficulties between Lindsey and the victim.

*Judgment affirmed. Pope, P. J., and Miller, J., concur.*

DECIDED DECEMBER 6, 2000.

*Whitman M. Dodge*, for appellant.

*Paul L. Howard, Jr., District Attorney, Alvera A. Wheeler, Assistant District Attorney*, for appellee.