A01A0390. THE STATE v. SHEPHARD.
(546 SE2d 823)

MIKELL, Judge.

Defendant Gary Paul Shephard was charged with driving under the influence of alcohol ("DUI"), having an unlawful blood alcohol concentration, striking a fixed object, and weaving on a roadway. He filed a motion to suppress evidence gathered inside his home following a warrantless entry by the police and to suppress statements he made due to *Miranda* violations. After a hearing, the trial court granted Shephard's motion to suppress, and the state appeals. We affirm the trial court's ruling.

It is well settled that when reviewing a trial court's decision regarding a motion to suppress evidence, the appellate court should be guided by three principles with regard to interpretation of the trial court's judgment of the facts:

> First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citations, punctuation and emphasis omitted.) *Tate v. State,* 264 Ga. 53, 54 (1) (440 SE2d 646) (1994); *State v. Aguirre,* 229 Ga. App. 736-

737 (494 SE2d 576) (1997).

So viewed, the evidence adduced at the suppression hearing demonstrates that at approximately 12:00 a.m. on December 30, 1999, Shephard's neighbor Brian Jankovich heard a "roar type of sound" coming from outside his home. Jankovich observed that a large crepe myrtle, an eight-foot juniper bush, and a mailbox had been knocked over and were lying near the curb. He realized that the "loud roar" was the revving engine of a black sport utility vehicle parked in Shephard's driveway, approximately three houses down the street. Jankovich testified that he watched the vehicle for at least five minutes and noticed that the horn was honking, the hazard signals were flashing, and that the accelerator was continuously applied. Jankovich called the police and then returned to his front porch to watch the vehicle. He testified that he heard the engine shut off and that he observed a tall white male staggering in the driveway, although he did not actually see anyone exit the vehicle. According to Jankovich, the man was groaning "like a wounded animal" before he went into the garage and disappeared from view.

Officer Ronald E. Purdue of the Cobb County Police Department arrived on the scene at 1:00 a.m., approximately one hour after Jankovich's call. Officer Purdue took a statement from Jankovich, observed the damage to the bushes and mailbox, and called to request backup. Officer Charles Neville arrived approximately twenty minutes later, and the two officers approached Shephard's home. They inspected the exterior of a black Ford Explorer parked in the driveway and noticed vegetation and dirt on the vehicle, and that the engine was still warm. They knocked on Shephard's front door, but there was no answer.

The officers looked through a window and observed a white man lying face down on the floor, with his head turned away from them. The man did not respond to the officers beating on the window. The officers requested that dispatch obtain the telephone number for Shephard's residence. According to Officer Purdue, dispatch was able to contact Shephard's wife, who then opened the door.

Officer Purdue testified that Mrs. Shephard gave consent for the officers to enter the home; however, she testified that the officers pushed past her into the home, and that she did not give them consent to enter. According to Officer Purdue, they approached Shephard, who was lying on the floor, and attempted to wake him. After "holler[ing]" at him and receiving no response, Officer Purdue testified that:

> I tried a pressure point here behind his ear and a little bit of response [sic]. And I believe, if I remember right, the one that really got him was the pressure point in his sternum.

> You apply a lot of pressure. It creates a lot of pain. It does no damage but got his attention[,] and he started coming to.

After the officers successfully roused Shephard, he had difficulty sitting up. Officer Purdue observed that Shephard "reeked of alcohol" and noticed scratches on his face and grass stains on his clothing. The officers asked him if he had been driving the Explorer that night, and he confirmed that he had. The officers then placed him under arrest. It is undisputed that *Miranda* rights were never read to Shephard. The officers put Shephard in the back of the police car and read him the implied consent notice. According to the officers, Shephard agreed to submit to a breath test.

On cross-examination, Officer Neville testified that they did not call an ambulance or request that medical technicians examine Shephard. He also testified that the officers' concern for Shephard's safety lessened prior to their entry into the home, because they concluded that it was unlikely that a person's head had hit the windshield of the vehicle.

At the close of the hearing, the trial court ruled that the state failed to prove that Shephard's wife consented to the officers' entry into the home, and that there were no exigent circumstances to justify the warrantless entry. The court further ruled that the officers' failure to read Shephard his *Miranda* rights would render anything he said after waking up inadmissible.

1. First, the state contends that the court erred in granting Shephard's motion to suppress, because exigent circumstances justified the officers' warrantless entry into the home. OCGA § 17-5-30 (a) (1). Specifically, the state argues that the officers reasonably believed that Shephard was in need of immediate aid, and, therefore, their warrantless entry was not illegal.

We have recognized that a private home is "an 'unquestionable zone of privacy under the Fourth Amendment,'" and that a warrantless search must be justified by exigent circumstances. *State v. Sims*, 240 Ga. App. 391, 392 (523 SE2d 619) (1999), citing *Bunn v. State*, 153 Ga. App. 270, 274 (265 SE2d 88) (1980). "[A]n exigent circumstance which does justify the warrantless entry of a private home is the officer's reasonable belief that such action is a necessary response on his part to an emergency situation." *Coker v. State*, 164 Ga. App. 493, 496 (5) (297 SE2d 68) (1982).

The state relies on *State v. Brannan*, 222 Ga. App. 372 (474 SE2d 267) (1996), to argue that the officers were justified in entering the home because they were concerned about the risk of harm to Shephard. However, that case is factually distinguishable from the case at bar. In *Brannan*, an officer conducted a warrantless search of a home after a gun had discharged, striking a child. In that case, we rea-

soned that the rifle represented a significant risk of harm to the persons in the home, including the treating medical personnel, and held that the officer was entitled to enter the home and seize the weapon. Id. at 373-374.

In the case sub judice, there was no evidence in the record to demonstrate that the officers reasonably believed Shephard was in need of immediate aid. Officer Purdue arrived at the scene one hour after Shephard's neighbor reported the accident, and he questioned the neighbor for another twenty minutes before he made any inquiry as to whether Shephard was injured. When the officers saw Shephard lying on the floor in his home, they did not call an ambulance. In fact, they waited while dispatch contacted Mrs. Shephard. Officer Neville testified that they were less concerned about Shephard's safety after they inspected the vehicle and saw no signs that his head had struck the windshield. When the officers entered the home, they attempted to wake Shephard by inflicting pain on him and yelling.

Moreover, in a similar case involving a DUI suspect whom the police observed sleeping on the sofa in his home, we held that the officers' subsequent warrantless entry was "unjustified, unreasonable, and illegal." *Griffith v. State*, 172 Ga. App. 255, 256 (1) (322 SE2d 921) (1984).

Accordingly, we conclude that the trial court's determination that the state failed to prove the existence of exigent circumstances was not clearly erroneous. See *State v. Gallup*, 236 Ga. App. 321, 325 (2) (512 SE2d 66) (1999). Consequently, it properly suppressed the evidence obtained as a result of the officers' warrantless entry into Shephard's home.

2. Next, the state argues that the court erred in suppressing Shephard's incriminating statements based on *Miranda* violations. It contends that Shephard was not in custody when the police questioned him prior to his arrest, and, therefore, it was not necessary for the officers to advise him of his *Miranda* rights. We disagree.

It is undisputed that the officers did not notify Shephard of his *Miranda* rights. *Miranda* warnings are required when a person has been taken into custody or otherwise deprived of his freedom of action. *Brannan*, supra, 222 Ga. App. at 374 (2). "To determine whether [a person's] statements were custodial, we apply an objective standard and determine whether a reasonable person in his situation would have believed he was physically deprived of his freedom of action in a significant way." Id.

The court concluded that Shephard was in custody from the time the police officers woke him and held that:

the defendant was awakened from what they said was an absolute dead sleep by two uniform police officers standing

over him in his home. I can't imagine a more coercive atmosphere unless he had awakened in a barred cell in a prison somewhere. I think he was in custody both in law and in fact[,] because I do not perceive under any set of circumstances outlined by the evidence that the defendant was free to go anywhere.

We conclude that the trial court's ruling was not clearly erroneous.

The state relies on *Shelton v. State*, 214 Ga. App. 166 (447 SE2d 115) (1994); however, that case is distinguishable from the case at bar. In *Shelton*, police officers questioned a DUI suspect at his home before advising him of his *Miranda* rights. We held that the trial court did not err in refusing to suppress the pre-*Miranda* statements, because there was no indication that the defendant had been taken into custody or otherwise deprived of his freedom of action. Unlike in the case sub judice, however, there was no warrantless entry by the police in *Shelton*, nor was there any indication that the officers actually roused the defendant from a deep sleep.

In the case sub judice, there was evidence in the record to support the trial judge's rulings. We construe the evidence favorably to upholding the trial court's findings and judgment. *Tate*, supra, 264 Ga. at 54.

*Judgment affirmed. Blackburn, C. J., and Pope, P. J., concur.*

DECIDED MARCH 5, 2001.

*Barry E. Morgan, Solicitor, Keith S. Hasson, Assistant Solicitor*, for appellant.

*Spruell, Taylor & Associates, Melinda D. Taylor*, for appellee.