## A02A1425. BAYSHORE v. THE STATE.
(573 SE2d 97)

MIKELL, Judge.

Thomas Bayshore was charged with possession of cocaine, obstruction of an officer, operating a motorcycle without a license and proof of insurance, and speeding. He filed a motion to suppress evidence seized by the arresting officer. The trial court held a hearing on May 10, 2001, and denied the motion. Bayshore elected to withdraw his demand for a jury trial, and the court granted his request. The state and Bayshore made a joint request that the court adjudicate the case based on the evidence presented at the motion hearing. Bayshore stipulated that the substance found in his possession was in fact cocaine. The trial court convicted Bayshore of the charged offenses. He was sentenced as a recidivist to a total of fifteen years, with five to be served in confinement and the balance on probation, and a $1,000 fine. Bayshore filed a motion for new trial which was denied. On appeal, he argues that the trial court erred in denying his motion to suppress.

"When we review a trial court's decision on a motion to suppress, the evidence is construed most favorably to uphold the findings and judgment of the trial court; the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous and will not be disturbed if there is any evidence to support them." (Citations omitted.) *State v. Corley*, 201 Ga. App. 320 (411 SE2d 324) (1991).

---

[29] See generally *Keanum v. State*, 212 Ga. App. 662, 663 (1) (442 SE2d 790) (1994).

Accord *State v. Dukes*, 234 Ga. App. 343, 347 (3) (507 SE2d 147) (1998); *Sprauve v. State*, 229 Ga. App. 478, 479 (1) (494 SE2d 294) (1997).

So viewed, the evidence adduced at the hearing demonstrates that on July 4, 2000, at approximately 10:10 a.m., Officer Kirk McLeroy of the Walton County Sheriff's Department observed Bayshore driving a motorcycle approximately 50 mph in a 35-mph zone. Next, the officer saw Bayshore turn onto the highway and accelerate to approximately 80 mph. Officer McLeroy determined Bayshore's speed by "pacing him." Essentially, the officer determined the rate at which his own vehicle was traveling and then proceeded to follow Bayshore at the same rate of speed for a half-mile. Officer McLeroy used his radar unit to verify that his own speedometer was accurate.

The officer activated his emergency lights and initiated a traffic stop. Officer McLeroy testified that Bayshore was unable to produce proof of insurance and that his driver's license did not have a motorcycle endorsement. Bayshore admitted at the hearing that he did not know that he was required to be specially licensed to drive a motorcycle and that he had not purchased insurance. Because Bayshore told the officer that he did not have insurance, Officer McLeroy decided to arrest him. The officer testified that if an insured driver merely has no proof of insurance, he generally issues him or her a citation, but if a driver admits to driving without insurance, normally he places the driver under arrest. Officer McLeroy asked Bayshore to get off the motorcycle and helped him with the kickstand. He did not tell Bayshore that he planned to arrest him at that time. When Officer McLeroy asked if Bayshore had any weapons, Bayshore responded that he did not and voluntarily began removing items from his pockets.

Officer McLeroy patted Bayshore down to check for weapons but could not touch Bayshore's right jacket pocket because Bayshore kept putting his hand in it. Bayshore testified at the hearing that he did not want Officer McLeroy to discover the contents of that pocket because it contained cocaine. A struggle ensued, and Bayshore fled on foot. He ran across the highway, and the officer pursued him. Bayshore jumped over a guardrail and fell down an embankment. Then, Bayshore ignored Officer McLeroy's command to halt and advanced toward the officer, who sprayed him with pepper spray. Bayshore was subsequently arrested.

The defense tendered a videotape of the stop that was filmed by a camera mounted on the officer's patrol car, and the tape was played for the court. It did not contain audio. Bayshore contends that the tape depicts the officer forcibly attempting to search him; however, our review of the tape does not support this contention. On the tape, Officer McLeroy is standing between the camera and Bayshore, and

it is not clear whether he attempted to reach into Bayshore's pockets or merely frisked him. Bayshore testified that Officer McLeroy attempted to search his pockets. However, the officer testified that he never attempted to search Bayshore and that he merely patted him down to confirm that Bayshore did not have a weapon before arresting him.

On appeal, Bayshore argues that the court erred in denying the motion to suppress, because Officer McLeroy unlawfully searched him. First, he contends that Officer McLeroy lacked the reasonable suspicion necessary to frisk him under *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968). In that case, the U. S. Supreme Court held that when a law enforcement officer reasonably believes that the person or persons with whom he is dealing may be armed, the officer may conduct "a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which [may] be used to assault him." Id. at 30 (V). The Court explained that "[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Id. at 27 (III). Accord *Brown v. State*, 181 Ga. App. 768, 770 (1) (a) (353 SE2d 572) (1987). Contrary to Bayshore's argument, Officer McLeroy testified that he patted Bayshore down prior to arresting him in order to confirm that he did not have a weapon in his possession. This testimony demonstrated that the officer reasonably suspected that Bayshore might have been armed, given that Bayshore thrust his hand into his jacket pocket whenever the officer patted that area. See generally *Pace v. State*, 219 Ga. App. 583, 584-585 (466 SE2d 254) (1995).

Next, Bayshore argues that Officer McLeroy exceeded the scope of a *Terry* frisk by reaching into his pocket. Bayshore is correct that "[a] frisk involves the patting-down of a person's outer clothing by a police officer. Unlike a full search, a frisk is conducted solely for the purpose of insuring the safety of the officer and of others nearby, not to procure evidence for use at a subsequent trial." (Citation and punctuation omitted.) *Brown*, supra. Accord *Corley v. State*, 236 Ga. App. 302, 304 (1) (512 SE2d 41) (1999); *Clark v. State*, 208 Ga. App. 896, 900-901 (2) (432 SE2d 220) (1993). However, in this case there was evidence that the officer merely patted Bayshore down and did not reach into his pocket. "[W]here there is a conflict in the evidence on the motion to suppress, the ruling of the trial court will be upheld where there is any evidence to authorize a finding in support of his order." *State v. Swift*, 232 Ga. 535, 536-537 (2) (207 SE2d 459) (1974). Because there is evidence to support the trial court's ruling that there was no illegal search, we affirm. Compare *Clark*, supra at 899-900 (2) (videotape of search revealed that officer put his hand inside

the defendant's pockets, going beyond the scope of a permissible pat-down search).

Finally, Bayshore argues that the officer's alleged attempt to reach into his pocket did not constitute a search incident to arrest, because he had not been arrested at the time. We need not address this argument, because there was evidence that Officer McLeroy merely patted Bayshore down and did not reach into his pockets before Bayshore fled the scene and was arrested.

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED OCTOBER 10, 2002 —
RECONSIDERATION DENIED OCTOBER 18, 2002 ▊

*Peevy & Lancaster, Gregory W. Lancaster, Lucas O. Harsh,* for appellant.

*W. Kendall Wynne, Jr., District Attorney, Charles E. Rooks, Assistant District Attorney,* for appellee.