## A03A0975. THE STATE v. MERIT.
(586 SE2d 393)

RUFFIN, Presiding Judge.

The State appeals the trial court's order granting Bryan Merit's motion to suppress evidence. For reasons that follow, we affirm.[1]

In reviewing the trial court's ruling on a motion to suppress, we follow three principles:

> First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support [them]. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.[2]

Viewed in this manner, the evidence shows that, at approximately 10:00 p.m. on March 17, 2002, the Clarkston Police Department dispatched Officer N. H. Bullock to investigate a residential alarm call at an apartment located in a "high-crime area." When he arrived at the scene, Bullock saw a pickup truck stopped in front of the apartment building with the engine running. An individual was sitting in the passenger seat, but the driver was not present. Finding the passenger "suspicious," Bullock called for backup, approached the truck, asked the passenger for identification, and determined that the passenger had several outstanding warrants. Bullock then placed the passenger in his police car.

At that point, Bullock noticed another individual walking from the apartment building. He approached that person, who he later determined owned the pickup truck, and smelled a strong odor of marijuana. Bullock obtained the individual's identification, patted him down, discovered a bag of marijuana in his pocket, and arrested him. By that time, backup officers had arrived, and Bullock began searching the pickup truck, where he found what he believed to be crack and powder cocaine. Bullock then questioned the truck owner about the drugs.

After speaking with the owner, Bullock walked toward the apart-

---

[1] Noting that the State filed its brief and enumeration of errors late, Merit moved to dismiss the State's appeal for violation of Court of Appeals Rule 26 (a). Although we are disturbed by the State's inability to meet this Court's deadlines, we will exercise our discretion and address the merits of the appeal. Accordingly, Merit's motion to dismiss is denied.

[2] *State v. Shephard*, 248 Ga. App. 433 (546 SE2d 823) (2001).

ment building and encountered a male, a female, and two children leaving the building. Although Bullock knew that the male had a prior history of weapons and narcotics charges, he had no reason to believe that this individual had committed any offense that night. Nevertheless, he asked another officer to detain the male temporarily. At that point, the female and children walked back into the apartment building, and Bullock followed them toward the apartment where the alarm call originated.

Bullock lost sight of the woman and children near the apartment, but he later saw them inside the residence. When Bullock approached the apartment door, he did not hear any shouts, screams, or the sound of an alarm. He knocked, and Merit opened the door. According to two people in the apartment, Bullock immediately walked into the residence, then asked who lived there. Janet Coggins, the woman Bullock followed toward the apartment, responded that the apartment belonged to her, and she showed Bullock her identification.[3] Merit informed Bullock that he did not live in the apartment and did not have any identification on his person. Bullock then stepped farther into the apartment and saw marijuana on a table. At that point, Bullock frisked Merit and found a rock of suspected crack cocaine in his pocket. Merit also claimed the marijuana on the table. Bullock handcuffed Merit and walked through the residence, discovering a shotgun in a bedroom.

Coggins testified that Merit's child accidentally activated the apartment's alarm, which the occupants turned off approximately 15 to 20 minutes before Bullock knocked on the door. She further testified that Bullock "just came in" the apartment, without asking permission to enter, and did not mention the alarm until she asked him why he was there.

Merit moved to suppress all evidence seized from his person and the apartment, arguing, among other things, that Bullock's warrantless entry violated the Fourth Amendment. The trial court agreed and suppressed all of the evidence. We find no error.

Without dispute, Bullock had neither a warrant nor consent authorizing him to enter the residence. Bullock's entry and resulting search, therefore, "must be justified by exigent circumstances."[4] Such circumstances arise when an officer reasonably believes that a war-

---

[3] The evidence shows that Coggins leased the apartment, but that Merit's father lived there. The trial court found that Merit had standing to challenge Bullock's entry into the apartment, and the State does not question that finding on appeal.

[4] *Shephard*, supra at 435 (1). See also *Pledger v. State*, 257 Ga. App. 794, 797 (572 SE2d 348) (2002) ("[A]n unconsented police *entry* into the home constitutes a search within the meaning of the Fourth Amendment.").

rantless entry "is a necessary response on his part to an emergency situation."[5] Whether these circumstances exist "is a question of fact to be determined by the trial court[, and t]he judge's decision, if supported by any evidence, is to be accepted."[6]

On appeal, the State argues that the alarm call created exigent circumstances justifying Bullock's entry. It asserts that Bullock reasonably believed "that violent criminal activity was occurring given the area, his experience and the nature of the [alarm] call." The trial court found, however, that Bullock did not have a reasonable belief that an emergency situation existed.

The evidence supports that factual finding. As noted by the trial court, Officer Bullock did not proceed immediately to the apartment when he arrived at the apartment building. Instead, he confronted two individuals outside the building. Furthermore, he did not go directly to the apartment once backup officers arrived, choosing instead to search the pickup truck, question the owner about drugs found inside the cab, and detain another individual who emerged from the building. Only at that point did he move inside the building. In addition, the evidence shows that he allowed a woman and two children to enter an apartment the State describes as a possible scene of violent criminal activity. Finally, when Bullock approached the apartment, he did not hear screams, shouts, or an alarm.

Given Bullock's delay in reaching the apartment, his decision to allow the woman and children to enter, and the lack of any signs of distress once he reached the residence, the trial court did not err in concluding that Bullock had no reasonable belief that individuals within the apartment needed immediate assistance.[7] Under these circumstances, the alarm call did not authorize Bullock to walk directly into the apartment when Merit opened the door.[8]

The trial court also did not err in rejecting Bullock's claim that concern for his safety authorized the immediate intrusion. At the suppression hearing, Bullock stated that he entered the apartment, in part, to protect himself. He also testified, however, that Merit

---

[5] (Punctuation omitted.) *Shephard,* supra.

[6] (Punctuation omitted.) *Butler v. State,* 185 Ga. App. 478, 480 (2) (364 SE2d 612) (1988).

[7] See *Shephard,* supra at 436 (motion to suppress properly granted where "there was no evidence in the record to demonstrate that the officers reasonably believed [defendant] was in need of immediate aid").

[8] As noted by the trial court, the State presented evidence that Bullock entered the apartment only after he explained why he was there, he determined that Merit was not a resident, and Merit attempted to shut the door on him. The trial court, however, resolved the conflicts in the evidence against the State and determined that Bullock walked through the door as soon as Merit opened it.

made no threatening movements when he opened the door. The evidence thus supports the trial court's finding.[9]

"[T]he plain view doctrine authorizes seizure of illegal or evidentiary items visible to a police officer only if the officer's *access* to the object itself has some prior Fourth Amendment justification."[10] Bullock only saw the marijuana in plain view *after* he unlawfully entered the apartment. His access to that contraband, therefore, violated the Fourth Amendment. His entry also resulted in the discovery of crack cocaine on Merit, as well as the shotgun and any other evidence seized from the apartment.[11] Accordingly, the trial court properly granted Merit's motion to suppress.

*Judgment affirmed. Smith, C. J., and Miller, J., concur.*

DECIDED AUGUST 12, 2003.

*J. Tom Morgan, District Attorney, Tammi S. Fuller, Thomas E. Csider, Assistant District Attorneys*, for appellant.
*Karlyn Skall*, for appellee.

---

[9] See *King v. State*, 217 Ga. App. 889, 891 (459 SE2d 605) (1995) (officer's minimal entry into threshold of residence not justified where State presented no evidence that entry was necessary to protect officer's safety). Cf. *Owens v. State*, 236 Ga. App. 534, 535-536 (512 SE2d 394) (1999) (entry into motel room authorized by officer's reasonable belief, based on the defendant's actions, that the defendant had a gun).

[10] *State v. David*, 269 Ga. 533, 535 (2) (501 SE2d 494) (1998).

[11] Officer Bullock testified that he generally "pat[s] down anyone [he] come[s] in[to] contact with" for officer safety. An officer may only frisk an individual for weapons when the officer "reasonably believes that the person . . . may be armed." *Bayshore v. State*, 258 Ga. App. 65, 67 (573 SE2d 97) (2002). We are troubled by Bullock's apparent practice of frisking all persons whom he encounters on patrol.