## A10A1249. DANIELS v. THE STATE.

(704 SE2d 466)

BARNES, Presiding Judge.

Following a stipulated bench trial, the trial court found Kenan Daniels guilty of possession of a firearm by a convicted felon. Daniels appeals, contending the trial court erred by denying his motion to suppress. As we find that the trial court erred by denying Daniels' motion to suppress, we must reverse his conviction and remand the case to the trial court with direction to grant Daniels' motion to suppress.

In this State,

> [w]hen an appellate court reviews a trial court's decision on a motion to suppress, our responsibility is to ensure that there was a substantial basis for the decision. *Morgan v. State*, 195 Ga. App. 732, 735 (3) (394 SE2d 639) (1990). We are guided by three principles when interpreting the trial court's determination of the facts. When considering such a motion the trial court is the trier of facts. The court hears the evidence, and when its findings are based upon conflicting evidence, they are analogous to a jury verdict and must not be disturbed by an appellate court if any evidence supports them. Also, the trial court's decisions regarding questions of fact and credibility of witnesses must be accepted unless they are clearly erroneous, and the evidence must be construed most favorably toward upholding the trial court's findings and judgment. *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994). Additionally, when the evidence is uncontroverted and no question about a witness's credibility exists, "the trial court's application of the law to undisputed facts is subject to de novo appellate review." *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

*Hobbs v. State*, 272 Ga. App. 148 (1) (611 SE2d 775) (2005). As the evidence is not controverted and no question of credibility exists, we will review the trial court's ruling de novo.

The evidence at the suppression hearing showed that at approximately 1:00 a.m. on November 15, 2009, a woman flagged down a patrol officer to report that her boyfriend had struck her, leaving a knot the size of a golf ball on her forehead, took her car keys, and left on foot from their hotel. The victim described the man as a light-skinned black male wearing a black leather coat, black pants, and black "Jordan" shoes. The officers began looking for the perpetrator in the area, and five to ten minutes later, they saw

Daniels walking about two blocks from the scene. They detained him as soon as they saw him.

The officers testified that Daniels was the only person walking on the street at that time. Without asking him to identify himself, the officers immediately handcuffed Daniels and then patted him down and found a gun in the waistband of his pants. The officers then took Daniels to the victim's location, and she said he was not the man who struck her. That man returned to the scene while the officers were holding Daniels.

Based on the gun found in Daniels' waistband, the State charged him with possession of a firearm by a convicted felon. Before trial, Daniels moved to suppress evidence of the gun supporting the charge, but after an evidentiary hearing, the trial court denied the motion, finding that the facts justified a brief investigative detention and pat-down for weapons for the officers' safety. The court further found that the fact that Daniels "was handcuffed prior to the authorized pat-down is irrelevant since all that was done was a pat-down and not a search." Then, after a bench trial in which Daniels stipulated to the evidence necessary to prove his guilt, the trial court found him guilty. This appeal followed.

1. Daniels first argues that police lacked authority to stop and frisk him as he walked down the street in the early morning hours of November 15, 2009. "Theoretically, there are at least three kinds of police-citizen encounters: verbal encounters involving no coercion or detention; brief 'stops' or 'seizures' which must be accompanied by a reasonable suspicion; and 'arrests' which must be supported by probable cause. [Cits.]" *Verhoeff v. State*, 184 Ga. App. 501, 503 (2) (362 SE2d 85) (1987). Because Daniels was stopped and detained, the parties agree that this encounter was a second-tier detention requiring reasonable, articulable suspicion of criminal activity.

Although "[n]o right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law," the United States Supreme Court has also recognized the need for effective law enforcement and for the protection of law enforcement personnel. (Punctuation omitted.) *Terry v. Ohio*, 392 U. S. 1, 9 (88 SC 1868, 20 LE2d 889) (1968).

> [T]he U. S. Supreme Court has determined that a law enforcement officer may conduct a constitutional investigatory stop of an individual when the officer is able to point to specific and articulable facts which, when taken together with rational inferences from those facts, reasonably warrant that intrusion. Over a decade later, the Court restated

218

the standard when it held that an investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity. The [Court] went on to elaborate: based upon the totality of the circumstances, the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity. Thus, the inferences and deductions of a trained officer, drawn from objective observation, must raise a suspicion that the particular individual being stopped is engaged in wrongdoing. This demand for specificity in the information upon which police action is predicated is the central teaching of the Supreme Court's Fourth Amendment jurisprudence.

(Citation and punctuation omitted.) *Postell v. State of Ga.*, 264 Ga. 249 (443 SE2d 628) (1994). "Whether a given set of facts rises to the level of reasonable, articulable suspicion of criminal activity is a legal question." *Jones v. State*, 253 Ga. App. 870, 873 (560 SE2d 749) (2000). Obviously, a mere hunch is not enough. *State v. Kwiatkowski*, 238 Ga. App. 390 (519 SE2d 43) (1999).

If an officer lacks probable cause to arrest a suspect, however, he need not "shrug his shoulders and allow a crime to occur or a criminal to escape." *Stiggers v. State*, 151 Ga. App. 546, 547 (260 SE2d 413) (1979). A "brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. [Cit.]" Id.

The evidence presented at the hearing on Daniels' motion to suppress shows that the officers had a sufficient basis for a brief initial *Terry* stop. Daniels partially fit the description given by the victim of the person who had attacked her. He had the correct skin tone, was wearing a black leather jacket, and had on dark jeans that, given the lighting, appeared black. Thus, we find that the trial court did not err by finding that the *initial* stop was authorized, given the description, the time of night, and the lack of foot traffic in the area. The discrepancies between Daniels' dress and the description were not apparent until after he was stopped.

2. Pretermitting whether the officers were authorized to handcuff Daniels, we find that the officers had no authority to conduct the pat-down that discovered the weapon on Daniels' person. In *Sibron v. New York*, 392 U. S. 40 (88 SC 1889, 20 LE2d 917) (1968), the Court held that a

police officer is not entitled to seize and search every person whom he sees on the street or of whom he makes inquiries.

Before he places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so. In the case of the self-protective search for weapons, he must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous.

Id. at 64. The fact that the officers suspected that Daniels might have been the one that assaulted the victim with his fists does not reasonably give rise to a belief that Daniels was armed and a threat to the officers. An officer may frisk a suspect during a second-tier stop only if the officer believes that the individual is armed or a threat to officer safety. See *Montgomery v. State*, 279 Ga. App. 419, 420 (631 SE2d 717) (2006).

The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.

(Citations and footnote omitted.) *Terry v. Ohio*, supra, 392 U. S. at 27.

The State has the burden of proving the propriety of a search without a warrant. See *State v. Slaughter*, 252 Ga. 435, 436 (315 SE2d 865) (1984). We are mindful, of course, that

a law enforcement officer who detains a person for purposes of investigation should not be denied the opportunity to protect himself from attack by a hostile suspect and may lawfully detain the person in a manner reasonably necessary to protect his personal safety and to maintain the status quo.

(Citations and punctuation omitted.) *Holsey v. State*, 271 Ga. 856, 861 (6) (524 SE2d 473) (1999). Nevertheless, we have said time and again that, in the context of an investigative detention, a frisk for weapons is permissible only when the officer has some reason to believe that the person detained has a weapon on or about his person. See, e.g., *Molina v. State*, 304 Ga. App. 93, 95 (695 SE2d 656) (2010); *State v. Merit*, 262 Ga. App. 687, 690, n. 11 (586 SE2d 393)

(2003); *Bayshore v. State*, 258 Ga. App. 65, 67 (573 SE2d 97) (2002); *Hodges v. State*, 217 Ga. App. 806, 808 (2) (460 SE2d 89) (1995).

The mere fact that the officers believed Daniels might be the person that struck a woman with his hands, without more, does not establish that the officers had a reason to believe that Daniels was carrying a weapon when they undertook to frisk him. Because the record reveals no proof of other circumstances known to the officers when they commenced the frisk that would lead a reasonable officer to conclude that Daniels had a weapon or instrument capable of being used as a weapon on his person,[1] the State has not carried its burden of proving the propriety of the search.

Accordingly, the trial court erred by finding that the officers were authorized to patdown Daniels and, thus, erred in denying Daniels' motion to suppress. Therefore, Daniels' conviction must be reversed and the case remanded to the trial court with direction to grant Daniels' motion to suppress.

*Judgment reversed and case remanded with direction. Blackwell and Dillard, JJ., concur.*

DECIDED DECEMBER 1, 2010.

*Lauren B. Shubow*, for appellant.
*Paul L. Howard, Jr., District Attorney, Elizabeth A. Baker, Walter B. Yarbrough, Assistant District Attorneys*, for appellee.

---

[1] For instance, there is nothing in the record to suggest that Daniels was hostile, belligerent or uncooperative when the officers stopped him, that the officers witnessed Daniels act in a suspicious or furtive manner, that Daniels appeared to be affiliated with a street gang, that the officers knew Daniels to have carried a weapon in the past, that someone had reported to the officers that the perpetrator for whom they were looking was armed, or that the officers were aware of facts about the assault they were investigating that would cause them to believe that a weapon was used in the assault.