A03A2438. THE STATE v. LUCAS.
(593 SE2d 707)

MIKELL, Judge.

The state appeals the trial court's order granting Vernon Franklin Lucas's motion to suppress his statement, made without the benefit of *Miranda* warnings, concerning ownership of marijuana found during a search of his residence. The state contends that Lucas's request for a hearing was untimely and that he was not in custody for *Miranda* purposes when he made the statement. We disagree and affirm.

1. Uniform Superior Court Rule 31.1 provides that "[a]ll motions, demurrers, and special pleas shall be made and filed at or before time of arraignment, unless time therefor is extended by the judge in writing prior to trial."[1] The record shows that Lucas complied with Rule 31.1 by filing his motion to suppress on July 11, 2002, 18 days prior to his July 29 arraignment. Nevertheless, the state argues that the trial court erred in holding a hearing on the admissibility of the statement pursuant to *Jackson v. Denno*[2] because Lucas did not file a request for a hearing until June 25, 2003. This contention is meritless. "Where the voluntariness of a confession is questioned on the trial of a criminal case it is necessary under [*Jackson v. Denno*] to have a separate hearing as to its voluntariness before it is finally presented to the jury for consideration as to its voluntariness."[3] In addition, the state failed to object in the trial court to Lucas's request for a hearing. "Hence, the first enumerated error attempts to raise for the first time a question which was not raised in the trial court and therefore presents nothing for decision."[4]

---

[1] See *State v. Serio*, 257 Ga. App. 369, 371 (2) (a) (571 SE2d 168) (2002).
[2] 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).
[3] (Citation, punctuation and emphasis omitted.) *Watson v. State*, 227 Ga. 698, 699 (1) (182 SE2d 446) (1971).
[4] (Citations omitted.) Id.

2. The state next challenges the trial court's ruling that Lucas was in custody for *Miranda* purposes when he stated that he owned the marijuana found in his residence. "The issue of whether one is in custody for *Miranda* purposes is a mixed question of law and fact, and the trial court's determination will not be disturbed unless it is clearly erroneous."[5] In addition, we construe the evidence in the light most favorable to the trial court's findings and judgment and will not disturb those findings unless no evidence exists to support them.[6]

So viewed, the evidence adduced at the hearing shows that two deputy sheriffs, Olen Harris and Dominick Crea, arrived at Lucas's residence on March 7, 2002, to serve a warrant on a man named Gerald Williams. Deputy Harris knocked on the front door while Deputy Crea guarded the back door in case Williams tried to flee. Lucas invited Deputy Harris inside the living area, where he and a man named Byrd were seated. At that moment, Deputy Harris saw Byrd lean down and place something beside his leg. Deputy Harris told Byrd to put his hands in his lap.

Deputy Harris called Deputy Crea inside, and Crea obtained permission from Lucas, who rented the house, to search for Williams. Deputy Crea went upstairs and discovered marijuana and rolling papers on top of a cookie tray in the bedroom. He brought the tray downstairs and inquired as to whom it belonged. Lucas replied that it was his, and he was arrested for possession of marijuana. Deputy Crea testified that Lucas was never given *Miranda* warnings.

While Deputy Crea was conducting the search, Deputy Harris remained downstairs. He asked Byrd what he placed beside his leg, and Byrd said "nothing." When Byrd tried to lean over again, Deputy Harris told him to put his hands back in his lap. Deputy Harris did not attempt to question Lucas except to ask for his name. On cross-examination, Deputy Harris admitted that he had seen marijuana "roaches" in an ashtray downstairs and that the presence of marijuana served as a reason for a search of the residence. Deputy Harris further testified that neither Byrd nor Lucas was free to leave during the search and that Harris "held both of them there . . . because there was an investigation going on."

Under *Miranda*, persons must be advised of their rights against self-incrimination after being taken into custody or otherwise deprived of their freedom of action in any significant way.[7] A person is in custody for *Miranda* purposes if he has been "formally arrested

---

[5] (Citation and punctuation omitted.) *Sims v. State*, 242 Ga. App. 460, 462 (2) (530 SE2d 212) (2000).

[6] *State v. Wilson*, 257 Ga. App. 120 (570 SE2d 409) (2002).

[7] *State v. Shephard*, 248 Ga. App. 433, 436 (2) (546 SE2d 823) (2001), citing *State v. Brannan*, 222 Ga. App. 372, 374 (2) (474 SE2d 267) (1996).

or restrained to the degree associated with a formal arrest."[8] In this case, the trial court ruled that Lucas's *Miranda* rights were violated because Deputy Harris had already decided to arrest Lucas when he was questioned by Deputy Crea concerning ownership of the marijuana and because Lucas was not free to leave. As to the first finding, the state correctly contends that the trial court erred in considering Deputy Harris's subjective intentions because "any inquiry into whether the interrogating officers have focused their suspicions upon the individual being questioned (assuming those suspicions remain undisclosed) is not relevant for purposes of *Miranda*."[9] Rather, an objective standard is used to determine custody, and the proper inquiry is whether a reasonable person in Lucas's place would have believed that his freedom was curtailed in a significant way when the deputy asked who owned the marijuana.[10] Contrary to the state's argument, however, the trial court's finding that Lucas was not free to leave is relevant to this determination. It is true that "[a]s a general rule, one who is the subject of a general on-the-scene investigation is not in custody though he may not be free to leave during the investigation."[11] Nevertheless, the police are permitted to make an initial, on-the-scene inquiry without administering *Miranda* warnings, "*solely* for the purpose of ascertaining whether or not there currently is any danger to them or to other persons who are present at the scene. The questioning must *not* be aimed at obtaining information to establish a suspect's guilt."[12] In this case, it is apparent that Deputy Crea's question concerning who owned the marijuana was aimed at establishing guilt. Moreover, Deputy Harris's testimony that he "held" the men and that they were not free to leave because Harris "didn't know what Mr. Byrd had beside his leg" supports a finding that a reasonable person in Lucas's place would have believed that his freedom was significantly curtailed at the time the question was asked. Accordingly, the trial court did not err in suppressing Lucas's statement.

*Judgment affirmed. Johnson, P. J., and Eldridge, J., concur.*

---

[8] (Punctuation and footnote omitted.) *Tolliver v. State*, 243 Ga. App. 180, 182 (2) (531 SE2d 383) (2000).

[9] (Citation omitted.) *Stansbury v. California*, 511 U. S. 318, 326 (114 SC 1526, 128 LE2d 293) (1994). Accord *McAllister v. State*, 270 Ga. 224, 227 (1) (507 SE2d 448) (1998); *Brannan*, supra at 375-376.

[10] *Brannan*, supra.

[11] (Punctuation and footnote omitted.) *Tolliver*, supra.

[12] (Citations and punctuation omitted.) *State v. Overby*, 249 Ga. 341-342 (290 SE2d 464) (1982).

DECIDED JANUARY 20, 2004.

*Gerald N. Blaney, Jr., Solicitor-General, Jeffrey P. Kwiatkowski, Gary S. Vey, Jennifer L. White, Assistant Solicitors-General, for appellant.*
*Daniel V. Klump, for appellee.*