## A06A0598. THE STATE v. SCOTT.
### (630 SE2d 563)

BARNES, Judge.

The State appeals from the trial court's grant of Michael Scott's motion to suppress evidence. Because we find that the police officers lacked a reasonable, articulable suspicion to stop the vehicle in which Scott was a passenger, we affirm.

Our Supreme Court has explained that three principles should guide our review of a trial court's ruling on a motion to suppress.

> First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support [them]. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citations, punctuation and emphasis omitted.) *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

Viewed in this light, the record shows that Scott was a high school student at Benjamin Mays High School, where school started at 8:15 a.m. and ended at 3:15 p.m. A City of Atlanta police officer, assigned to work at the high school as a school resource officer,

testified that at the end of a school day, he received a phone call from another police officer working at the high school instructing him to stop a white car that had circled the school "with some possible students" in it. When the officer stopped the vehicle in front of the school, on school property, the front seat passenger, Corey Biace, tried to get out of the car before it came to a complete stop. When the officer approached Biace, Biace kept repeating, "Awe man, awe man, I messed up," and placed his hand in his pocket. When the officer pulled his hand out of his pocket, marijuana came out with it. The officer then placed all four occupants of the car into handcuffs and instructed them to sit on the ground. According to the officer, the assistant principal arrived at that point and instructed him to search the other students for marijuana.

The assistant principal testified that he arrived five to ten minutes after the car was stopped, around 3:30 to 3:45 p.m. He recalled that Biace was already in handcuffs when he arrived, but could not recall if the others were handcuffed. The assistant principal testified that he searched Scott and found his car keys and $500. When he asked Scott where his car was located, Scott denied that he had driven it to school that day. An ROTC instructor who overheard this claim explained that it was not true and stated that Scott's car was parked about 60 yards away on school property in front of the gym.

The assistant principal testified that he decided to search Scott's car because: (1) Scott lied about the car's location; (2) he found a large amount of money on Scott; (3) the other passenger in the car had marijuana; and (4) he had previously learned that Scott might be involved in selling marijuana. Although the assistant principal never testified that he obtained Scott's consent to search the car and was not questioned about this issue, the police officer testified that the principal asked for and obtained Scott's consent to search it.

The assistant principal and the police officer searched Scott's car together. The assistant principal instructed the police officer to open the car with the key obtained from Scott. When the assistant principal picked up a jacket lying on the seat, he found a handgun and moved away. The police officer removed the gun from the car and called for a K-9 unit to search the car because "there was a strong odor of [dry] marijuana" in the car. The assistant principal initially testified that he did not know whether he smelled marijuana in the car because he was "not trained for that." He then testified that he did not recall if he smelled marijuana in the car. The K-9 unit arrived 30 minutes later, and the officers found marijuana behind the car radio. It was packaged in 15 individual plastic bags that were inside a larger plastic bag.

Scott was indicted for possession of marijuana with intent to distribute and possession of a weapon near or on school property, along with two other weapons charges. He moved to suppress evidence of the marijuana and gun found in his car, arguing that the police searched him and his vehicle without probable cause. In its order granting Scott's motion, the trial court found the police officer's testimony that he smelled marijuana in Scott's car "somewhat incredible, that the officer's claim is that he smelled marijuana in a parked unoccupied car, which was not being smoked, was dry, presumably was packaged, and was ultimately found behind the dashboard radio." The trial court then applied the standard of review for searches performed by school officials, see *State v. Young*, 234 Ga. 488 (216 SE2d 586) (1975), and concluded:

> In the instant case, the original automobile was stopped for a suspected school violation, i.e., leaving campus during school hours. The initial search was tenuous in its appropriateness, in that it bore no relation to the stated reason for the stop. The procedure became even more tenuous when a second automobile, approximately 60 yards away, was searched based upon the discovery of a key and some money in a young man's pocket and based upon rumors and suspicions supposedly known by the administration far in advance of the initial stop. Such actions were whimsical, tyrannical and unreasonable within the meaning of *Young*, supra.

On appeal, the State urges that the search was appropriate for three reasons: (1) the Fourth Amendment permits school officials to search students even if there is not probable cause; (2) the initial stop was valid because of suspected truancy, and the police officer had probable cause to search Scott after one of the passengers made incriminating remarks; and (3) Scott consented to the search.

1. Our analysis must begin with deciding the appropriate legal standard to apply to the facts before us. In *State v. Young*, supra, the Supreme Court noted that with regard to the Fourth Amendment,

> there are really three groups: private persons; governmental agents whose conduct is state action invoking the Fourth Amendment; and governmental *law enforcement* agents for whose violations of the Fourth Amendment the exclusionary rule will be applied.

(Emphasis in original.) Id. at 493 (2). The intermediate group includes school officials, whose conduct is "subject only to the most

minimal restraints necessary to insure that students are not whimsically stripped of personal privacy and subjected to petty tyranny." Id. at 496 (2). The exclusionary rule does not apply when school officials violate the Fourth Amendment. Id. at 493-494 (2).

Although the Supreme Court gave great leeway to school officials searching students in *Young*, it also drew a bright line between searches conducted solely by school officials and those involving a law enforcement officer. Id. at 494, 498. See also *State v. K. L. M.*, 278 Ga. App. 219 (628 SE2d 651) (2006). "[A]ction by school officials will pass constitutional muster *only if* those officials are acting in their proper capacity and *the search is free of involvement by law enforcement personnel*." (Emphasis supplied.) *State v. Young*, supra, 234 Ga. at 498 (2). Thus, the minimal restraint analysis of *Young* will not apply even if a law enforcement officer searches at the direction of a school official. *State v. K. L. M.*, supra. For purposes of *Young*, a police officer assigned to work at a school as a school resource officer should be considered a law enforcement officer, not a school official. See *Patman v. State*, 244 Ga. App. 833, 834 (537 SE2d 118) (2000).

In this case, Scott's first contact with police occurred when law enforcement officers decided, with no input from a school official, to stop the car in which Scott was a passenger. Thus, the *Young* analysis regarding school officials clearly does not apply to the stop, and we must apply traditional Fourth Amendment search and seizure principles to determine whether the police officer was justified in stopping the vehicle in which Scott was riding.

2. "There are three levels of police-citizen encounters: (1) consensual police-citizen communication that involves no coercion or detention; (2) brief investigatory stops that must be supported by reasonable suspicion; and (3) arrests, which must be supported by probable cause." (Footnote omitted.) *State v. Baker*, 261 Ga. App. 258, 259 (582 SE2d 133) (2003). The "investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." (Citation and punctuation omitted.) *Crowley v. State*, 267 Ga. App. 718, 719 (601 SE2d 154) (2004). "[A] general suspicion or a mere hunch is not sufficient to support an investigat[ory] stop." (Footnote omitted.) *Baker v. State*, 277 Ga. App. 520, 521 (1) (627 SE2d 145) (2006).

In this case, the police officer complied with another officer's request to stop a white car "with some possible students" in it that had circled the school at the end of the school day. The officer who made the stop testified, "We didn't know if they were students or not." Although the State asserts the stop was valid based on a suspected truancy violation, no witness testified at the suppression hearing that the car was stopped because the passengers might be truant. A mere suspicion that there might be students in the car — the reason

the officer gave for stopping the vehicle — does not lead to an articulable suspicion that the driver and passengers were committing a criminal act. See *Attaway v. State*, 236 Ga. App. 307, 308 (511 SE2d 635) (1999) (driving around subdivision several times late at night did not provide reasonable articulable suspicion to stop); see also *Duke v. State*, 257 Ga. App. 609, 610 (571 SE2d 414) (2002) (dispatch to stop driver of specific vehicle suspected of being involved in drug transaction did not provide reasonable and articulable suspicion to stop). Accordingly, the police officer had no probable cause to stop the vehicle in which Scott was riding.

3. Having found that the police officer's stop of the car was not justified, we must now determine whether evidence obtained as a result of this stop must be suppressed. The State argues that Scott consented to the search, and that therefore the evidence is admissible even if the initial stop was invalid. Evidence is not always excluded just because it comes to light as a result of illegal actions by the police, if the police found the evidence "by means sufficiently distinguishable to be purged of the primary taint" of the illegal stop. (Footnote omitted.) *Baker v. State*, supra at 523 (2).

> Thus, even if evidence would not have been discovered but for the illegal police conduct, if the derivative evidence has only an attenuated link to the illegality, it need not be suppressed. The relevant factors include the temporal proximity of an illegal seizure and consent, intervening circumstances, and the purpose and flagrancy of the official misconduct. The question of whether consent is the product of free will or the preceding illegality must be answered under the facts of each case; no single fact is dispositive.

(Footnotes omitted.) Id. at 523-524 (2).

In this case, Scott's consent was a direct product of the preceding illegality. The officer articulated no reasonable belief that Scott was armed and represented a danger to himself or to others, so as to justify patting him down and finding his cash and car keys in his pocket. *State v. King*, 227 Ga. App. 466, 468 (489 SE2d 361) (1997). Further, no significant amount of time lapsed between the stop and the search of Scott and his car. No intervening circumstances arose between the stop and the searches that were sufficiently distinguishable to purge the primary taint of the illegal stop. To the contrary, the evidence showed that all four of the young men in the vehicle were handcuffed and seated on the curb per the police officer's direction when Scott was searched and questioned. Therefore, the effect of the

unlawful detention had not dissipated and the taint of the unreasonable stop was not sufficiently attenuated. *Ward v. State*, 277 Ga. App. 790 (627 SE2d 862) (2006).

Accordingly, we conclude that the trial court properly granted Scott's motion to suppress.

*Judgment affirmed. Andrews, P. J., and Bernes, J., concur.*

DECIDED APRIL 20, 2006.

*Paul L. Howard, Jr., District Attorney, Ayana C. Curry, Assistant District Attorney*, for appellant.
*Cyprian T. Okonkwo*, for appellee.

