A06A2472. PEREZ v. THE STATE.
(643 SE2d 792)

MILLER, Judge.

Following a jury trial, Ernest Perez was convicted on two counts of burglary and four counts of theft by receiving. Perez now appeals from the trial court's denial of his motion for a new trial citing: (1) insufficient evidence to sustain his convictions for burglary; (2) error by the trial court in admitting certain evidence; and (3) ineffective assistance of counsel. Finding that Perez received ineffective assistance of trial counsel, we reverse.

"On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and [the defendant] no longer enjoys a presumption of innocence." (Citations, punctuation and footnotes omitted.) *Jackson v. State*, 252 Ga. App. 268 (1) (555 SE2d 908) (2001). We determine only whether the evidence, so construed, was sufficient to support the verdict, and in doing so we neither weigh that evidence nor judge the credibility of the witnesses. Id.

Perez's convictions stem from a police investigation into a series of burglaries in Dalton during July 2003. The offices of Garland Sales, a local business, were burglarized and vandalized over the weekend of July 4, 2003. The home of Denise Parker was burglarized on July 15, 2003 and the residences of Jodi Brown and Angela Velasquez were burglarized the following day. On July 21, 2003, Patricia Quarles discovered that an unoccupied house she owned had been burglarized.

Also on July 21, 2003, after having been out of town for approximately three weeks, Barbara Grass returned to find her home had been burglarized and that an empty wine bottle had been left next to her mailbox. The police learned that a driver for Dalton Taxi had picked up a male passenger at Ms. Grass' address early on the morning of July 21, 2003. The man had been drinking a bottle of wine, which he left at the edge of Ms. Grass' driveway, entered the taxi carrying a black bag, and asked to be driven to the corner of Harris and East Morris Streets in Dalton.

At roll call on the evening of July 22, 2003 Officers Daniel Burt and Woody Cantrell of the Dalton Police Department were told that a possible burglary suspect had been dropped off at the corner of Harris and Morris Streets the day before. The suspect was described as a Hispanic male between 5'6" and 5'8" tall and weighing approximately 150-160 pounds.

A short time later, Officers Burt and Cantrell were in the area of Harris and Morris Streets when they saw Perez walking with Cecilia Gonzalez, a woman with a known history of arrests. The officers decided to "make contact" with Perez because they had never seen him before, and he "kind of fit the description" of the burglary suspect last seen in that area. Officer Burt did so by approaching Perez, asking him his name, and informing him that he was going to pat him down for weapons, because they were in "a dangerous area." During the pat-down Officer Burt felt hard objects in two of Perez's pockets. When asked about the first item, Perez confirmed that it was a knife. After informing Perez that he was going to do so, Burt removed the knife from Perez's pocket. The knife, which had been stolen from the offices of Garland Sales, came out entangled with jewelry stolen from the Brown, Velasquez, and Parker residences.

When Burt asked Perez about the object in the other pocket, Perez told the officer he could remove it. Burt removed a glass "crack" pipe and more stolen jewelry. Burt then placed Perez under arrest for possession of the crack pipe.

During their search of Perez, the police also found a receipt that was later identified as having come from Quarles' home. Additionally, after discovering the jewelry in Perez's pockets, the officers questioned Gonzalez about the jewelry she was wearing, and Gonzalez told them that Perez had given it to her. The police later determined that the jewelry worn by Gonzalez had been stolen from the Grass residence.

The police contacted the taxi driver, who came to the scene and identified Perez as the man he had picked up outside of Grass' house.

After being told by Gonzalez that Perez lived at an address on Harris Street, the police conducted a search of the same, where they found a number of items stolen from the Brown, Velasquez, and Parker residences and from the offices of Garland Sales. Police also questioned one of Perez's neighbors, who told police that Perez had sold him a laptop computer, which police later determined was stolen from Garland Sales.

Perez was subsequently indicted on twelve counts of burglary, two counts of attempted burglary, and one count of entering an automobile with the intent to commit a theft. The state did not prosecute three counts of burglary and one count of attempted burglary. Perez was convicted of burglarizing the homes of Grass

(Count 10) and Quarles (Count 12) and of four counts of the lesser included offense of theft by receiving with respect to the Garland Sales, Parker, Brown, and Velasquez burglaries. He was acquitted on all other charges.

1. Perez asserts that the evidence against him, which was entirely circumstantial, is insufficient to support these convictions and, at most, such evidence would support a conviction on the lesser included offense of theft by receiving. We disagree.

Evidence is sufficient to support a conviction if, when viewed in the light most favorable to the verdict, it would allow a rational trier of fact to find a defendant guilty of the charged offense beyond a reasonable doubt. *Morgan v. State*, 277 Ga. App. 670, 671-672 (1) (627 SE2d 413) (2006). "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-4-6. The proved facts "need exclude only *reasonable* hypotheses — not bare possibilities that the crime could have been committed by someone else." *Morris v. State*, 202 Ga. App. 673, 674 (415 SE2d 485) (1992). "[W]hether . . . circumstances are sufficient to exclude every reasonable hypothesis save the guilt of the accused is primarily a question for determination by the jury," (punctuation and footnote omitted) *Bollinger v. State*, 259 Ga. App. 102, 104 (1) (576 SE2d 80) (2003), and the jury's finding on this question "will not be disturbed unless the verdict of guilty is insupportable as a matter of law." (Citation omitted.) *Foster v. State*, 273 Ga. 34, 35 (1) (537 SE2d 659) (2000).

To sustain the burglary convictions the evidence must have allowed the jury to find that Perez: (1) entered the Grass and Quarles residences without authority; and (2) intended to commit a theft in each of those homes. OCGA § 16-7-1 (a). See also *Bollinger v. State*, supra, 259 Ga. App. at 103 (1). The evidence supporting Perez's conviction on Count 10 included Grass' phone book being left open to the page listing the telephone number for Dalton Taxi, the piece of paper in the house on which the phone number for Dalton Taxi had been written, and the fact that someone had phoned Dalton Taxi from inside the house. Additionally, the taxi driver testified that he picked up Perez from outside Grass' residence early on the morning of July 21, 2003. Finally, items taken from the Grass home were found on Perez when the police searched him on July 22, 2003, and Gonzalez told police that she received the jewelry she was wearing, which came from the Grass house, from Perez.

The evidence supporting Perez's conviction on Count 12 consisted of the receipt that was identified as coming from Quarles' house and which was found on Perez when the police searched him.

This evidence was sufficient to allow the jury to find that the only reasonable hypothesis was that Perez had entered each of the homes with the intent to commit a theft. See *Bollinger v. State*, supra, 259 Ga. App. 102.

2. Perez argues that the trial court erred in allowing the receipt to be introduced into evidence and in allowing Quarles to testify about the same. Perez asserts that this evidence constituted inadmissible hearsay, because Quarles was not the individual who had purchased the item for which the receipt evidenced a purchase. Neither the receipt nor the testimony, however, were being offered to demonstrate who had purchased the item or any of the circumstances surrounding that purchase. Rather, the receipt and testimony were offered to show that Perez had removed the receipt from Quarles' house. Quarles was fully qualified to testify as to this matter, and that testimony did not constitute hearsay. See OCGA § 24-3-1. The trial court's admission of both the receipt and the testimony regarding the same, therefore, was not error.

3. Perez also argues that he received ineffective assistance of counsel, and identifies five separate deficiencies in trial counsel's representation of him, including trial counsel's failure to: (1) move to suppress the evidence discovered as a result of the police search of his person prior to his arrest; (2) move to suppress the "show up" identification of Perez by the taxi driver; (3) object to testimony regarding the fact that Perez invoked his right to remain silent; (4) ask for independent expert analysis of fingerprint evidence found at the scene of several burglaries; and (5) impeach Gonzalez.

"To prevail on a claim of ineffective assistance of trial counsel, [a defendant] bears the burden of showing both that trial counsel was deficient and that he was prejudiced by the deficiency." (Footnote omitted.) *Welbon v. State*, 278 Ga. 312, 313 (2) (602 SE2d 610) (2004). Prejudice is shown by demonstrating "that a reasonable probability exists that the outcome of the case would have been different but for the deficient performance of counsel." (Citations omitted.) *Allen v. State*, 277 Ga. 502, 503 (3) (591 SE2d 784) (2004).

(a) Perez argues that Officer Burt's search of him on July 22, 2003 was illegal, and that trial counsel should have moved to suppress the evidence obtained as a result of that search. We agree.

The question in this case is whether the police stop and pat-down of Perez constituted a permissible investigative or *Terry* stop.[1] Such stops allow police to stop an individual, "detain them briefly, and frisk them for the officer's safety where there is a reasonable suspicion that such persons are involved in criminal activity." *Rogers v. State*, 206

---

[1] *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

Ga. App. 654, 659 (3) (426 SE2d 209) (1992). Any such detention and investigation, however, must be supported by "a particularized and objective basis for suspecting the person[ is] involved in criminal activity." (Citation and punctuation omitted.) *State v. Burks*, 240 Ga. App. 425, 426 (1) (523 SE2d 648) (1999). Specifically, there must exist some "objective manifestation that the person stopped is, or is about to be, engaged in criminal activity" or is wanted for past criminal conduct. (Citations and footnote omitted.) *United States v. Cortez*, 449 U. S. 411, 417 (II) (A) (101 SC 690, 66 LE2d 621) (1981). "A general suspicion or a mere hunch is not sufficient to support an investigatory stop." (Citation and punctuation omitted.) *State v. Scott*, 279 Ga. App. 52, 55 (2) (630 SE2d 563) (2006).

Although a *Terry* stop and pat-down for weapons are not always analyzed separately,

> [e]ven a particularized and objective basis for [making the stop does not] authorize a pat-down of the suspect for weapons. An officer who has lawfully detained a citizen is authorized to conduct a *Terry* pat-down for weapons only if the officer has a reasonable belief preparatory to an in- tended pat-down that the suspect is armed and presents a danger to the officer or others.

(Citation and footnote omitted.) *Edgell v. State*, 253 Ga. App. 775, 777-778 (560 SE2d 532) (2002). "Implicit in this rule of law is the prerequisite determination that the officer actually concluded that the suspect was armed or a threat to personal safety and the officer can articulate a basis for his conclusion so that a protective pat-down would not be unreasonable in the given set of circumstances." (Foot- note omitted.) *Parnell v. State*, 280 Ga. App. 665, 670 (2) (b) (634 SE2d 763) (2006). "This demand for specificity in the information upon which police action is predicated is the central teaching of the Supreme Court's Fourth Amendment jurisprudence." (Punctuation omitted.) *Vansant v. State*, 264 Ga. 319, 320 (2) (443 SE2d 474) (1994), quoting *Terry v. Ohio*, 392 U. S. 1, 21, n. 18 (88 SC 1868, 20 LE2d 889) (1968).

In this case, assuming arguendo that the police stop of Perez was lawful, the pat-down for weapons was not. The testimony of both Burt and Cantrell demonstrates that, before performing the pat-down of Perez, they obtained no information that would support a reasonable belief that Perez was armed or dangerous. Indeed, Burt freely ad- mitted that he performed the pat-down for weapons before he ever questioned Perez, and that he did so not because he suspected Perez of being armed or dangerous, but simply because they were in a "dangerous area."

Under these circumstances, therefore, the search of Perez was illegal, and trial counsel's failure to move to suppress the results of that search rendered him ineffective. Furthermore, it is clear that this ineffectiveness prejudiced Perez. The only evidence to support Perez's convictions resulted, either directly or indirectly, from the illegal search of his person. The fact that items taken from the Grass and Quarles residences were found on Perez's person was crucial to sustaining his burglary convictions. Similarly, the items found on Perez that had been stolen from the Brown, Velasquez, and Parker residences and from the offices of Garland Sales helped support Perez's convictions for theft by receiving.

Moreover, it was only after the police found the stolen items on Perez that they questioned Gonzalez about the jewelry she was wearing and about Perez's place of residence. Perez's possession of items found during the illegal search of his person thus provided the basis for the police search of the residence where Perez had been living and their questioning of his neighbor. It is therefore possible that the identification of Perez by the taxi driver, the jewelry taken from Gonzalez and her testimony regarding the same, and the evidence discovered during the residential search was tainted by the prior, illegal search of Perez. See, e.g., *Baker v. State*, 277 Ga. App. 520, 523 (2) (627 SE2d 145) (2006). If so, such evidence would also be subject to suppression as "fruit of the poisonous tree." Id. We leave that issue, however, for the trial court's determination upon any suppression motion filed in conjunction with Perez's new trial.

(b) In light of the foregoing, we need not address Perez's remaining arguments as to his ineffective assistance of counsel claim.

The judgment of the trial court denying Perez's motion for a new trial is reversed.

*Judgment reversed. Johnson, P. J., and Ellington, J., concur.*

DECIDED MARCH 14, 2007.

*Bentley C. Adams III, Wayne H. Basford*, for appellant.

*Kermit N. McManus, District Attorney, Forest L. Miles, Assistant District Attorney*, for appellee.