663 S.E.2d 392 (2008)
In the Interest of T.A.G., a child.
No. A08A0445.
Court of Appeals of Georgia.
June 18, 2008.
*393 W. Kendall Wynne, District Attorney, Vanessa C. Webber, Assistant District Attorney, for appellant.
Jennifer L. Lewis, for appellee.
BARNES, Chief Judge.
The State filed a delinquency petition against 13-year-old T.A.G., alleging that he robbed two individuals. Before the adjudicatory hearing, T.A.G. moved to suppress several incriminating statements that he made before he was advised of his Miranda rights. The juvenile court denied the motion as to one statement, but granted it as to another. The State appeals the partial grant of T.A.G.'s motion to suppress, and for reasons that follow, we affirm.
On appeal, we construe the evidence in favor of the juvenile court's suppression ruling. State v. K.L.M., 278 Ga.App. 219, 628 S.E.2d 651 (2006). The juvenile court  not this Court  makes factual and credibility determinations, and we will uphold those determinations unless they are clearly erroneous. Id.
So viewed, the evidence shows that in November 2006, administrators at Loganville Middle School received a report that two students had been robbed in the boys' bathroom during a school basketball game. T.A.G. was implicated, and an assistant principal, whose job duties included investigating conduct violations, interviewed him. Only the principal and T.A.G. were present during the interview. Although T.A.G. initially denied participating in the crimes, he eventually admitted during the interview that he took money from one of the victims. He insisted, however, that he did not steal from the other victim.
The assistant principal informed another assistant principal involved in the investigation about T.A.G.'s admission, and he took T.A.G. to her office. After further questioning by the second assistant principal, T.A.G. admitted not only taking money from the first victim, but removing money from the other victim's wallet, as well. The administrators then prepared disciplinary paperwork, and T.A.G. went home.
The record shows that the school "resource officer"  a police officer assigned to the school  was present during the second interview with T.A.G. At the time, the officer was wearing a shirt that identified him as a police officer, as well as a gun and police utility belt. Both administrators and the officer all testified that the officer asked no questions during the interview and was present for safety purposes. At one point during the interview, however, the second assistant principal asked the officer whether T.A.G. could be charged with a crime. The officer responded that robbery would be an appropriate charge. The assistant principal explained that she typically confers with the officer about possible charges, and they "kind of work together on that."
The record further shows that the officer learned about the robbery allegations that morning, and one of the administrators told him she would "look into it and keep him posted." According to the officer, he generally does not participate in school investigations because once he "become[s] involved... it changes the rules you play by." After school officials completed their interviews, *394 however, they provided the witness statements to the officer, who determined whether criminal charges should be brought.
T.A.G. moved to suppress his statements to both administrators on the ground that he had not been advised of his Miranda rights. Concluding that T.A.G. made the statement to the first assistant principal without police involvement, the juvenile court denied the motion as to that statement. With respect to the second interview, however, the juvenile court found that the second assistant principal was acting as an agent of the police at the time, that a law enforcement officer was involved in the interview, and that T.A.G. was in custody. It further found that the police were trying to "usurp [Miranda] by having the school officials do all the interrogating while they stand by and don't ask a question, but ... then ... take all the statements that were obtained [by the] school officials and make that part of the [police] investigation." It thus excluded the statement.
1. On appeal, both parties rely heavily on our Supreme Court's decision in State v. Young, 234 Ga. 488, 216 S.E.2d 586 (1975), which addressed the application of Fourth Amendment search and seizure law  and the associated exclusionary rule  in the public school setting. Analyzing whether evidence seized by a high school principal should be excluded from a student's criminal trial, the Court noted that three groups of persons exist: private individuals; governmental agents whose conduct constitutes state action covered by the Fourth Amendment; and law enforcement personnel who are governed by both the Fourth Amendment and the exclusionary rule. Id., at 493(2). The Court explained:
With reference to searches by private persons, there is no Fourth Amendment prohibition and therefore no occasion for applying the exclusionary rule. [Cit.] The third group, law enforcement officers, of course, are bound by the full panoply of Fourth Amendment rights and are subject to the application of the exclusionary rule. But the intermediate group, including public school officials, plainly are state officers whose action is state action bringing the Fourth Amendment into play; but they are not state law enforcement officials, with respect to whom the exclusionary rule is applied.
Id. at 493-494, 216 S.E.2d 586.
Under Young, if the school official acts without law enforcement involvement, the exclusionary rule does not apply, even if the official's conduct violates the Fourth Amendment. Id. at 494, 216 S.E.2d 586. The violation results not in evidence suppression, but in some other remedy afforded by law, such as a civil damages claim. Id. at 494, 216 S.E.2d 586. If police personnel become involved in the school action, however, a Fourth Amendment violation results in exclusion of the evidence. See id.; State v. Scott, 279 Ga.App. 52, 55(1), 630 S.E.2d 563 (2006); K.L.M., supra, 278 Ga.App. at 220-221, 628 S.E.2d 651. And "[f]or purposes of Young, a police officer assigned to work at a school as a school resource officer should be considered a law enforcement officer, not a school official." Scott, supra, 279 Ga.App. at 55, 630 S.E.2d 563.
Although the Young decision focuses on the Fourth Amendment, we have applied its reasoning in a case involving a claimed violation of the Fifth Amendment right against self-incrimination. See State v. J.T., 155 Ga.App. 812, 273 S.E.2d 214 (1980). The State also concedes Young's relevance here. Thus, the juvenile court first considered whether law enforcement was involved in obtaining T.A.G.'s statement to the second official. Answering this question affirmatively, the juvenile court concluded that the police officer assigned to the school was involved and that the assistant principal was acting as an agent of law enforcement at the time. The State challenges both of these findings.
(a) Involvement. The State argues that the officer was merely present during the second interview with T.A.G. and took no part in the questioning. Undoubtedly, administrators made a concerted effort to limit the officer's role during student interviews, and the officer testified that he generally did not participate in school investigations. Police involvement, however, need not be substantial to remove the case from the intermediate group of governmental actors described *395 by Young. See K.L.M., supra, 278 Ga.App. at 220-221, 628 S.E.2d 651. On the contrary, any involvement or participation by law enforcement officers brings a case within Young's third category, implicating the exclusionary rule. See id.
Although an officer's mere presence in the room, without more, might not constitute police participation, at least some evidence supports the juvenile court's finding that the officer was more involved here. Specifically, the armed officer was invited into the interview after T.A.G. confessed to one robbery, but was maintaining innocence as to the other. At that point, T.A.G. had been in the school's front office for approximately five hours, he had already been interviewed, and the second administrator was preparing to question him again. During the interview, and in front of T.A.G., the officer advised the assistant principal on what type of criminal charges might be brought against T.A.G. The juvenile then confessed to the second robbery. Under these circumstances, the juvenile court was authorized to find that the officer was more than merely present and, in fact, participated in the interview process.
(b) Agent of the police. Moreover, even if the officer avoided direct involvement, some evidence supports the juvenile court's finding that the second administrator acted as an instrument or agent of police during the interview. This agency determination "must be resolved on a case-by-case basis, by viewing the totality of the circumstances." Cook v. State, 270 Ga. 820, 827(2), 514 S.E.2d 657 (1999).
According to the administrators, they interviewed T.A.G. as part of their school conduct investigation, and they only involved the officer to ensure the safety of themselves and the students. The second administrator, however, also admitted that, in conjunction with such investigations, she often conferred with the officer about possible criminal charges, as well as questions to ask during an interview. As she testified: "[N]ormally I'll ask the questions and if I miss something or if I didn't ask a good question then ... [the officer will] tell me later or I can ask him later about it, ... go back and ask them another question to get more information or something that ... I missed." Furthermore, she and the officer knew that different "rules" would apply if the police became involved, so they decided that the officer should not ask questions. And the fruits of the investigation were ultimately turned over to the police.
Given the totality of these circumstances, we cannot reverse the juvenile court's finding that the second assistant principal acted as an agent or instrument of the police in interviewing T.A.G. See Cook, supra, 270 Ga. at 824, 514 S.E.2d 657 (a trial court's factual and credibility determinations regarding the admission of a statement will be affirmed on appeal unless clearly erroneous); Pruitt v. State, 263 Ga.App. 814, 818(2), 589 S.E.2d 591 (2003) ("The test is whether the private individual, in light of all the circumstances of the case, must be regarded as having acted as an `instrument' or agent of the government when he produced the evidence."). Compare Joines v. State, 264 Ga.App. 558, 560(1), 591 S.E.2d 454 (2003) (trial court properly denied motion to suppress information obtained from teacher's school computer where nothing in the record demonstrated or implied that the principal "acted as a law enforcement agent or on law enforcement's behalf in logging into the computer and ordering the search of the hard drive").
2. "Under Miranda, persons must be advised of their rights against self-incrimination after being taken into custody or otherwise deprived of their freedom of action in any significant way." State v. Lucas, 265 Ga.App. at 242, 243(2), 593 S.E.2d 707 (2004). Absent such advice, statements made during a custodial interrogation to law enforcement officers or their agents generally will be excluded from evidence. McDougal v. State, 277 Ga. 493, 497(1), 591 S.E.2d 788 (2004); see also Bethea v. State, 251 Ga. 328, 330-331(7), 304 S.E.2d 713 (1983) (Miranda applies to statements made to officers or their agents).
As discussed above, the juvenile court found that T.A.G. was questioned by an agent of the police with the involvement and participation of the school resource officer. It then considered whether T.A.G. was in *396 custody, and thus entitled to his Miranda warnings, during the second interview. The issue of custody focuses on "the objective circumstances attending the particular interrogation at issue, and not upon the subjective views of either the person being interrogated or the interrogating officer." McDougal, supra, 277 Ga. at 497, 591 S.E.2d 788. The relevant inquiry is whether a reasonable person in the suspect's position would have believed that his freedom "was curtailed in a significant way." Lucas, supra, 265 Ga.App. at 244, 593 S.E.2d 707; see also McDougal, supra, 277 Ga. at 497, 591 S.E.2d 788.
On appeal, the State argues that the resource officer's mere presence during the interview did not "elevate an otherwise non-custodial questioning into a custodial interrogation." The juvenile court, however, rejected the "mere presence" argument, finding that the officer was involved in the process and that the administrator acted on his behalf.
Furthermore, once T.A.G. admitted during the first interview that he had robbed one student, he was taken into a room with an armed police officer and questioned again by a second administrator. Particularly given the prior confession, the juvenile court was authorized to conclude that a reasonable person in T.A.G.'s position would have believed he was not free to leave the office, that "the detention would not be temporary," and that he was in custody. Price v. State, 269 Ga. 222, 225(3), 498 S.E.2d 262 (1998); see also Lucas, 265 Ga.App. at 243, 593 S.E.2d 707 ("`The issue of whether one is in custody for Miranda purposes is a mixed question of law and fact, and the trial court's determination will not be disturbed unless it is clearly erroneous.'"). It follows that the trial court properly suppressed T.A.G's pre-Miranda statement to the second assistant principal.
Judgment affirmed.
JOHNSON, P.J., and PHIPPS, J., concur.