## A09A0261. DORSEY v. THE STATE.
### (676 SE2d 890)

MIKELL, Judge.

A Newton County jury found Marquez L. Dorsey guilty of armed robbery, and the trial court sentenced him to 20 years, 12 in confinement and the remainder on probation. Dorsey appeals from the order denying his motion for new trial, raising only the general grounds. We affirm.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence; moreover, this Court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. Resolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are the province of the factfinder, not this Court. As long as there is some competent evidence, even though contradicted, to support each necessary element of the state's case, this Court will uphold the jury's verdict.[1]

Properly viewed, the evidence shows that on the night of August 24, 2006, Michael Pitts was at the home of a girl named Jennifer when Dorsey came over with Quantay Thomas. Arthur McKeeve Ott arrived later, and two other girls were there as well. According to Dorsey's testimony, Thomas began "joking" about needing money. After midnight, Dorsey decided to leave. He testified that he agreed to give Thomas a ride to a convenience store and Ott a ride home.

Dorsey drove Thomas and Ott to a Golden Pantry convenience store located on Salem Road in Newton County. Instead of parking in the parking lot, however, Dorsey parked on the road adjacent to the lot. Thomas and Ott went into the store, stayed two or three minutes, and came back running. Dorsey testified that they were nervous and sweating, and Ott was wearing a mask. Thomas announced that he and Ott had robbed the store. According to Dorsey, Thomas and Ott were wearing regular clothes when they entered the store, and Dorsey had no idea that they were planning a robbery.

---

[1] (Punctuation and footnotes omitted.) *Howard v. State*, 291 Ga. App. 289 (661 SE2d 644) (2008). See *Buruca v. State*, 278 Ga. App. 650-651 (629 SE2d 438) (2006).

David Njagi, the cashier at the Golden Pantry, testified that he was robbed at gunpoint at 3:30 a.m. by two masked men. The men, one of whom carried a gun, stole $146 from the cash register and also took cigarettes and cigars. Njagi called 911 after the men left.

Meanwhile, Dorsey drove off with Thomas and Ott. Dorsey testified that when he saw a police car behind him with its lights and sirens on, he pulled over, realized that he did not have his license, panicked, and then "hit the gas." Dorsey ultimately lost control of the car and crashed it at the entrance to his subdivision, which was located in Rockdale County. All three men fled on foot. Dorsey and Thomas went back to Jennifer's house. Pitts was still there. According to Pitts, the men were breathing hard, and they said that they were running from the police. Pitts and Thomas walked outside, where they were apprehended by Rockdale deputies.

Sergeant Sonny Goodsdon and Investigator Paul Gunter of the Newton County Sheriff's Office each testified that they were called to the scene of the wreck. The officers testified that they observed a gun in the wrecked car as well as items that had been taken in the robbery, including boxes of cigarettes and packages of sweet cakes. Clothing identified from a video of the robbery, including stocking caps with holes cut out for the eyes, also was found in the car. Gunter testified that he found Dorsey's driver's license in the driver's seat. Shaquetta Beam, Dorsey's sister, came outside their house after noticing all of the activity on the street and asked Gunter if he had seen Dorsey. Gunter said he had not, but he knew that he had Dorsey's license in his pocket. Gunter also testified that Beam told him that she had seen Dorsey driving by the house around 11:00 p.m. with Thomas in the passenger seat. At trial, Beam denied seeing Dorsey in his car.

Pitts and Thomas were interviewed. Goodsdon testified that Thomas dropped $52 in cash under the interview table. Gunter testified that Thomas implicated Dorsey and Ott in the robbery.

Beam convinced Dorsey to turn himself in. Dorsey gave a statement in which he admitted "having a discussion" about robbing the store. Dorsey also stated that he "tried to punk out" when "we" were "about to do it." Dorsey's statement was played for the jury. Gunter testified that Dorsey stated that he was willing to return his portion of the "take," and he gave Gunter permission to search his home. Gunter accompanied Dorsey to his house, where he retrieved $50 that he had hidden in a sofa. Dorsey's thumb prints were lifted from a cigarette pack taken in the robbery. Dorsey admitted hiding the cigarette pack in the car before he fled so that the deputy would not see it.

"A person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the

person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon."[2] Dorsey argues that there was no evidence that he was involved in the commission of the robbery. We disagree.

OCGA § 16-2-20 (a) provides: "Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime." Such person includes one who "[i]ntentionally aids or abets in the commission of the crime."[3] In the case at bar, there was evidence that Dorsey discussed robbing the store, drove Thomas and Ott there, and parked the car outside the lot for a quick getaway. Other evidence showed that Dorsey drove the getaway car evasively while chased by the authorities, crashing the car at the entrance to his subdivision. Additionally, Dorsey fled, and he took a share of the stolen money. When viewed together with the evidence found in Dorsey's car, including the stolen goods, the clothing worn by Thomas and Ott, and the gun, the evidence authorized the jury to find beyond a reasonable doubt that Dorsey intentionally aided or abetted in the commission of the armed robbery by driving the getaway car and was therefore guilty as a party to the crime.[4] Although Dorsey offered an innocent explanation for his conduct, the jury was not required to believe it.[5]

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED APRIL 1, 2009.

*Teresa L. Smith*, for appellant.
*W. Kendall Wynne, Jr., District Attorney, Layla H. Zon, Assistant District Attorney*, for appellee.

---

[2] OCGA § 16-8-41 (a).

[3] OCGA § 16-2-20 (b) (3). See *Engrisch v. State*, 293 Ga. App. 810, 811 (668 SE2d 319) (2008).

[4] See *Tanksley v. State*, 226 Ga. App. 505-506 (487 SE2d 98) (1997); *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[5] See *Cobb v. State*, 60 Ga. App. 194 (3 SE2d 212) (1939) ("it is the prerogative of the jury to accept the defendant's statement as a whole, or to reject it as a whole, to believe it in part, or disbelieve it in part. In the exercise of this discretion they are unlimited") (citations omitted).