A10A1884, A10A1885. FLINT v. THE STATE (two cases).
(707 SE2d 498)

MIKELL, Judge.

Sanchez Lorenzo Flint (Case No. A10A1884) and Terrail Devon Flint (Case No. A10A1885), who are cousins, appeal from the denial of their motions for new trial following their convictions by a jury of armed robbery, OCGA § 16-8-41. Their appeals have been consolidated. Finding no reversible error, we affirm.

1. Both appellants argue that their motions for new trial were improperly denied because the evidence was insufficient to find them guilty beyond a reasonable doubt.[1]

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and an appellant

---

[1] This ground is addressed in Sanchez Flint's second enumeration of error and in Terrail Flint's first enumeration of error.

no longer enjoys the presumption of innocence. This court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia* and does not weigh the evidence or determine witness credibility.[2]

So viewed, the evidence shows that the robbery occurred on the evening of December 16, 2006. Ramon Perez and Brian Allen were assistant managers of a shoe store, Shoe Department, located on Mall Boulevard in Gwinnett County. Perez and Allen were required to close the store at 9:00 p.m., then clean up, count the proceeds, and prepare bank deposits. Because the store had been robbed before, the bank deposit was split, with Perez and Allen each having a bank bag. Perez's deposit was composed of twenty-one $100 bills, fifty $20 bills, and two $50 bills, totaling $3,200. As Perez was leaving the store around 10:15 p.m., he saw a man who appeared to be getting ready to cross Mall Boulevard standing near a tree and a streetlight. Perez could see that the man was African-American and that he had twists in his hair.

Nelldra Allen ("Nelldra"), Allen's wife, had arrived at the store around 10:00 p.m. to pick him up. She had backed her car into a handicapped space near the front door, where she waited around 20 minutes for Perez and Allen to come out of the store. Nelldra also noticed the man standing near a tree and streetlight close to the street. He had not been there when she pulled in and she continued to watch him because she knew the store had been robbed before. Nelldra saw the man run toward Perez and Allen as they came out of the store. He put on a ski mask and pulled out a silver gun. Allen had gotten into the car with Nelldra and she sped around the parking lot blowing her horn. She almost hit the man with the gun.

Perez had walked around the Allens' car, gotten in his truck, and was reaching for the door when the man wearing a ski mask appeared in front of him with the gun, demanding the money. The man was wearing clothing similar to the man he had seen earlier, a long-sleeved white thermal shirt with a short-sleeved dark shirt over it. Perez gave the man the bank bag and the man ran toward a nearby Barnacles Restaurant. Nelldra, who witnessed the robbery and saw the robber running toward Barnacles, drove back to the store to check on Perez and they called the police. Nelldra also described the robber as having twists in his hair and wearing black with a white long-sleeved shirt on underneath. All three witnesses to the robbery described the shoes worn by the robber as white Air Force Ones.

[2] (Footnote omitted.) *Buruca v. State*, 278 Ga. App. 650-651 (629 SE2d 438) (2006).

Gwinnett County Police Sergeant Jay Parish was working an extra job as security at the Gwinnett Prado that evening. He was wearing his uniform and driving an unmarked car with concealed blue lights. He was backed into a parking space on the other side of Mall Boulevard almost directly across from the Shoe Department. After hearing the dispatch call of an armed robbery, he started patrolling the area because the dispatch said the subject fled toward Barnacles, which was near him. Within nine minutes of hearing the dispatch, as Sergeant Parish approached the Enterprise Rental Car lot,[3] which was closed, he saw two men, later identified as Sanchez Flint and Terrail Flint, looking over their shoulders and appearing very nervous. Sergeant Parish stopped his car, flipped his blue lights on, started to get out of his car, and said "stop, can I talk to you for a second." Both men fled and Sergeant Parish put out a call on his radio. Other officers working off-duty jobs at Barnacles caught the Flints in the Bank of America parking lot. A search of the area revealed a ski mask and a dark t-shirt underneath a shrub at Barnacles. No gun was found. When Parish arrived at the bank, he noticed dollar bills sticking out of the back of Sanchez Flint's pants.

Gwinnett Officer Jennifer Scott went to Perez and the Allens and began taking their statements. She received information that two suspects had been apprehended. After Nelldra finished her statement, Officer Scott put her in her patrol car and drove her by the bank where the Flints were being held. The two men were about 100 feet apart and were standing under lights in the parking lot. Terrail Flint was wearing white Air Force One shoes. Nelldra noted that both men were out of breath and she identified Terrail Flint as the robber, saying "[t]hat's him. I'm 99% sure that's him." Nelldra noted that he had taken off the white shirt and the mask. When Perez was driven by the two men, he recognized Sanchez Flint as a former employee of the Shoe Department who had worked nights with him and was familiar with the deposit procedures. Perez also noted that the other man, Terrail Flint, had hair twists similar to the person he had seen in the parking lot and was about the same height as the person who committed the robbery. Allen also noted that Terrail Flint was the same height and build as the robber and had similar hair twists. These viewings of the two suspects took place within 45 minutes to an hour after the robbery.

Officer Paul Tremblay, who helped transport the two men to jail, found numerous dollar bills on the floor around Sanchez Flint's feet. Officers collected twenty-one $100 bills, two $50 bills, and fifty-one $20 bills for a total of $3,220. This was the amount stolen by the

---

[3] Barnacles' blue roof could be seen from Enterprise's parking lot.

robber plus one $20 bill.

DNA samples were taken from the Flints and, according to the forensic biologist who made the comparison, saliva from the area around the mouth hole of the mask found at Barnacles matched the DNA of Sanchez Flint.

We find the evidence legally sufficient to support the conviction of armed robbery of Sanchez Flint and Terrail Flint.[4]

### Case No. A10A1884

2. In his first enumeration of error, Sanchez Flint argues that the trial court erred in denying his motion to suppress the DNA evidence because the state failed to introduce evidence at the motion to suppress hearing.

The DNA samples were taken from Sanchez Flint and Terrail Flint pursuant to a search warrant. Sanchez Flint filed a motion to suppress, contending that the affidavit submitted to obtain the warrant was insufficient. Sanchez Flint is correct that, at the beginning of the hearing on his motion, the trial court stated to defense counsel, "[i]t's your motion . . . ," thereby incorrectly placing the burden on the defendant.

OCGA § 17-5-30 (b) addresses the burden of proof as to suppression of evidence and states that "the burden of proving that the search and seizure were lawful shall be on the state." This burden "is a burden of persuasion. As such, it does not shift during the course of the motion hearing, even though the burden of producing evidence may shift back and forth."[5]

The record reflects that copies of the affidavit and the warrant were attached to the motion to suppress and additionally submitted to the Court during the hearing. Here, as in *Bowman v. State*,[6] the warrant and affidavit were sufficient to satisfy the state's burden and any error in the procedure followed by the trial court was harmless.

3. In his third enumeration of error, Sanchez Flint contends that the trial court erred in refusing to give his requested jury charge on theft by receiving, which he argued was a lesser included offense of armed robbery.

Theft by receiving, however, is not a lesser included offense of

---

[4] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Dorsey v. State*, 297 Ga. App. 268, 270 (676 SE2d 890) (2009).

[5] (Citations and punctuation omitted.) *Davis v. State*, 266 Ga. 212-213 (465 SE2d 438) (1996).

[6] 205 Ga. App. 347, 348 (422 SE2d 239) (1992).

armed robbery.[7] It is a separate offense proved by an entirely different set of facts.[8] As such, Sanchez Flint was not entitled to a charge on theft by receiving, and the trial court did not err in refusing to give the requested charge.

4. Sanchez Flint's fourth enumeration is that the trial court abused its discretion by permitting opening statements and testimony that mentioned prior robberies at the store.

There was, however, no objection voiced to this evidence below, and this failure constitutes a waiver of appellate review of the issue.[9]

5. In his final enumeration, Sanchez Flint contends that his trial counsel rendered ineffective assistance during his trial for failing to object to the references to other robberies of the store.

In order to prevail on his claims of ineffectiveness, [Flint] must demonstrate that his trial attorney's performance was deficient and that the deficiency so prejudiced him that a reasonable probability exists that, but for his attorney's errors, the outcome of his trial would have been different; [Flint] must overcome the strong presumption that counsel's actions fell within the broad range of professional conduct.[10]

At the hearing on the motion for new trial, Sanchez Flint's trial attorney was asked if he had a strategic or tactical reason not to object to this evidence. He testified that, in his opinion, the evidence was not relevant to his client because the witnesses testified that they recognized Sanchez at the showup because he was previously employed at the store. As counsel testified, "[o]bviously, if they had seen him at any of the other robberies, they would have identified him at that time."

"[A]s a general rule, matters of reasonable trial tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel. A reviewing court evaluates trial counsel's performance from counsel's perspective at the time of trial."[11]

We find no error in the trial court's denying Sanchez Flint's motion for new trial on this ground.

---

[7] *Frazier v. State*, 257 Ga. 690, 699 (17) (362 SE2d 351) (1987).

[8] *Dean v. State*, 292 Ga. App. 695, 701 (4) (665 SE2d 406) (2008).

[9] *Hicks v. State*, 285 Ga. 386, 389 (4) (677 SE2d 111) (2009).

[10] (Citation omitted.) *Futch v. State*, 286 Ga. 378, 380 (2) (687 SE2d 805) (2010).

[11] (Citations, punctuation and footnotes omitted.) *Sillah v. State*, 291 Ga. App. 848, 852 (3) (663 SE2d 274) (2008).

## Case No. A10A1885

6. Terrail Flint argues that the trial court erred in denying his motion to suppress the showup identification.

At a hearing on a motion to suppress, the trial judge sits as the trier of fact.[12]

> In cases involving the review of the grant or denial of motions to suppress or motions in limine, we must construe the evidence most favorably to uphold the findings and judgment of the trial court, and that court's findings as to disputed facts and credibility must be adopted unless clearly erroneous.[13]

> Although a one-on-one showup is inherently suggestive, identification testimony produced from the showup is not necessarily inadmissible. We must apply a two-part test to determine whether the showup was impermissibly suggestive, and, if the showup was impermissibly suggestive, we then consider the totality of the circumstances to determine whether a "very substantial likelihood" existed of irreparable misidentification. With regard to part one of the test, this Court has previously held that on-the-scene showup identifications, like the one in the present case, are often necessary "due to the practicabilities inherent in such situations." Thus, as long as this type of showup was reasonably and fairly conducted at or near the time of the offense, it is not impermissibly suggestive and we need not reach the second part of the test.[14]

Here, on and off duty police officers quickly converged on the scene of an armed robbery and encountered two suspects in the area who then fled. The victim and two witnesses were driven by officers to the two suspects separately within an hour of the robbery. Nelldra Allen was 99 percent sure Terrail Flint was the robber. Brian Allen noted that Terrail Flint was the same height and build as the robber and had hair twists similar to the robber. Perez also noted the hair twists and identified Sanchez Flint as a former employee of the store. Construing this evidence most favorably to the upholding of the trial

---

[12] *Page v. State*, 296 Ga. App. 431 (1) (674 SE2d 654) (2009).

[13] (Citation and punctuation omitted.) *Self v. State*, 245 Ga. App. 270, 272-273 (2) (537 SE2d 723) (2000).

[14] (Footnotes omitted.) *Wallace v. State*, 295 Ga. App. 452, 454 (1) (671 SE2d 911) (2009).

court's findings and judgment,[15] we affirm the trial court's finding that these showups were not impermissibly suggestive.

*Judgments affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED FEBRUARY 22, 2011 —
RECONSIDERATION DENIED MARCH 18, 2011 —

*Edwin J. Wilson*, for appellant (case no. A10A1884).

*Clark & Towne, Jessica R. Towne*, for appellant (case no. A10A1885).

*Daniel J. Porter, District Attorney, Nigel R. Lush, Assistant District Attorney*, for appellee.