## A11A1518. BUFORD v. THE STATE.
(718 SE2d 605)

ANDREWS, Judge.

On appeal from his conviction for DUI and the trial court's previous denial of his motion to suppress positive blood-alcohol results, Robert Buford argues that the results should have been suppressed because he was neither under arrest nor unconscious when the tests were taken. We find no error and affirm.

On review from the denial of a motion to suppress, we consider all the evidence of record, including evidence introduced at trial. *Jackson v. State*, 280 Ga. App. 716 (634 SE2d 846) (2006). Where the evidence at a hearing on a motion to suppress is uncontroverted and

---

no question of credibility is presented, we review the trial court's application of the law to these undisputed facts de novo. *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994). As to questions of fact and credibility, however, we construe the evidence in favor of the trial court's findings and judgment, which must be accepted unless clearly erroneous. *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

So viewed, the record shows that on the evening of Thursday, June 18, 2009, Buford lost control of the car he was driving in Cherokee County. The car flipped over and hit a tree. Emergency personnel transported Buford by helicopter to Grady Memorial Hospital and advised the trooper at the scene that Buford smelled of alcohol. The trooper, who assumed from the helicopter transport that Buford's condition was "pretty serious," drove to Grady, where hospital personnel told him that Buford was conscious.

When the trooper entered the room on the early morning of June 19, Buford was "taped to the spine board," had "tubes coming from every which direction," and "had a [stabilizing] collar on." His eyes were closed, and he was silent. The trooper, who could smell alcohol on Buford's breath and in the room, told Buford who he was and attempted to get Buford to respond, but concluded from Buford's silence that he was under the influence of alcohol. The trooper also learned that Buford was taking narcotics for back pain. The trooper then told Buford that he was "going to charge him with DUI" and read him the implied consent notice. Although Buford opened his eyes at one point during these proceedings, he remained silent throughout and appeared to the trooper to be going in and out of consciousness.

After hospital staff drew a blood sample showing a blood alcohol level of 0.157, nearly twice the legal limit, they told the trooper that Buford was going to be admitted and that they did not know how long he would be there. The trooper responded that he would obtain a warrant for Buford's arrest. The warrant issued the same day. Buford was arrested the following November.

1. Buford first argues that the implied consent notice given pursuant to OCGA § 40-5-67.1 (b) was ineffective because he was not under arrest at the time it was given. We disagree.

"OCGA § 40-5-55 provides that consent is implied only if a person is placed under a third-tier arrest based on probable cause to believe he has violated OCGA § 40-6-391." (Footnotes omitted.) *State v. Norris*, 281 Ga. App. 193, 195 (635 SE2d 810) (2006). "A third-tier arrest is thus a full-blown custodial arrest as opposed to a temporary second-tier investigative detention." Id. It follows that the question whether an implied consent notice was adequate turns on " 'whether the individual was formally arrested or restrained to a degree

associated with a formal arrest, [and] not whether the police had probable cause to arrest.' " *Suluki v. State*, 302 Ga. App. 735, 738 (1) (691 SE2d 626) (2010), quoting *State v. Fisher*, 293 Ga. App. 228, 230 (666 SE2d 594) (2008). " 'The test is whether a reasonable person in the suspect's position would have thought the detention would not be temporary.' " Id. Finally, the question whether someone is under custodial arrest

> is a mixed question of law and fact. Therefore, to the extent that determination of the issue hinges on resolution of factual questions, [an appellate court] construe[s] the evidence most favorably to uphold the trial court's findings and accept those findings unless they are clearly erroneous; but [the appellate court] independently appl[ies] the legal principles to those facts.

*Norris*, 281 Ga. App. at 196; see also *State v. Lucas*, 265 Ga. App. 242, 243 (2) (593 SE2d 707) (2004).

It is undisputed that at the time of his encounter with the trooper, Buford was secured to a board in a hospital room with tubes attached to his body. Even assuming that Buford was alert rather than coming in and out of consciousness at the time, a reasonable person in his situation could not have thought that he was free to leave when the trooper announced that he was charging him with DUI. " '[A] defendant may voluntarily submit to being considered under arrest without any actual touching or show of force.' " *Hough v. State*, 279 Ga. 711, 716 (620 SE2d 380) (2005), quoting *Clements v. State*, 226 Ga. 66, 67 (2) (172 SE2d 600) (1970). It follows that this trial court did not clearly err when it found that Buford was under arrest when the trooper announced that he was being charged with DUI. *Lucas*, 265 Ga. App. at 244 (affirming suppression of defendant's statement on the basis of trial court's factual finding that defendant's "freedom was significantly curtailed" at the time the statement was obtained); compare *Hough*, 279 Ga. at 717 (reversing trial court's finding that defendant was under arrest where there was "no indication of an arrest at [the time the implied consent notice was given,] whether by citation or otherwise").

2. In light of the above, we need not determine whether Buford's injuries were serious enough to justify the administration of a blood test without the reading of the implied consent notice for the purpose of preserving evidence. See *Hough*, 279 Ga. at 713 (1); *Gilliam v. State*, 295 Ga. App. 358 (671 SE2d 859) (2008).

*Judgment affirmed. Phipps, P. J., and McFadden, J., concur.*

DECIDED NOVEMBER 4, 2011.

*Banks & Riedel, Jeffrey S. Banks*, for appellant.
*David L. Cannon, Jr., Solicitor-General*, for appellee.