**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**February 4, 2014**

# In the Court of Appeals of Georgia

A13A2152. PARKER v. THE STATE.

MILLER, Judge.

Following a stipulated bench trial, the trial court found Male Parker guilty of armed robbery (OCGA § 16-8-41). On appeal, Parker challenges the trial court's denial of his motion to suppress, contending that the trial court erred in allowing hearsay evidence and

failing to suppress statements he made to police officers, evidence found during a search of his residence, and photographic identifications of Parker. Discerning no error, we affirm.

In reviewing a trial court's ruling on a motion to suppress, we may consider all relevant and admissible evidence of record introduced at the motion hearing or during trial. See *Walker v. State*, 314 Ga. App. 67 (1) (722 SE2d 887) (2012). Additionally,

> [w]hile a trial court's findings as to disputed facts will be reviewed to determine whether the ruling was clearly erroneous, where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review.

(Citation and punctuation omitted.) Id.

So viewed, the evidence shows that in April 2010, Parker and his girlfriend resided in apartment number 2203 at the Waterford Club Apartments in Lithia Springs. At that time, Parker owned a Hi Point semi-automatic 9mm pistol. Sometime before April 19, 2010, co-defendant Jabree Smith approached Parker with a plan to commit an armed robbery, and Parker agreed to participate in the armed robbery of the victim.

On April 19, 2010, the victim traveled to the Waterford Club Apartments, believing that he was meeting Smith to purchase one pound of marijuana for $1,300. Neither Parker, Smith, nor a third co-defendant, Matthew Bourassa, ever intended to sell marijuana to the victim, and no one in the trio had a pound of marijuana to sell. When the victim arrived at the apartment complex, he met Smith in the parking lot, and Smith directed the victim to the 2300 building. Parker and Bourassa were hiding in a basement level breezeway. Smith led the victim down some stairs and into the breezeway, whereupon Parker pointed his loaded gun at the victim and cocked it.

2

Parker ordered the victim to get on the ground, and Bourassa then searched the victim. Upon taking the victim's cell phone and a wallet, Parker told the victim, "[w]e ought to just shoot you."

The victim told Parker and the co-defendants that a friend was holding the money for the victim at a nearby gas station. Parker gave his gun to Smith, and Smith held the victim at gunpoint while the victim drove to the gas station. Once they arrived at the gas station, Smith exited the car and fled on foot to apartment number 2203, where he returned the gun to Parker. Parker hid the gun in the closet of his master bedroom. Smith and Bourassa then went to Bourassa's residence, Waterford Club apartment number 2222. The victim subsequently called the police.

The investigating officer spoke to the victim and, upon learning that the robbery occurred at the Waterford Club Apartments, the investigating officer, the victim, and other officers went to that apartment complex. The investigating officer then received a physical description of the suspects and began canvassing the complex in search for individuals matching that description. The investigating officer spoke to a leasing agent, and she identified Bourassa as an individual matching the physical description of one of the suspects. The agent directed the investigating officer to apartment number 2222.

3

The investigating officer and other officers proceeded to Bourassa's apartment and knocked on the door. Bourassa answered the door, stepped outside, and briefly spoke to the investigating officer . The investigating officer told Bourassa that he was investigating an armed robbery and asked whether anyone else was in the apartment. Bourassa stated that Smith was inside the residence, and Smith was ultimately removed from the apartment. While Bourassa and Smith were outside the apartment, the victim positively identified them as his assailants. Bourassa and Smith were then arrested and transported to the Douglas County Sheriff's Office.

After being advised of and waiving their *Miranda* rights, Bourassa and Smith both gave statements admitting that they and Parker were involved in the armed robbery. During these custodial interviews, Bourassa and Smith provided Parker's physical description and information that Parker used the first name "Marquis," he lived in apartment 2203 with his girlfriend, and his girlfriend drove a white Dodge Avenger.

The investigating officer then directed other police officers, who were still at apartment 2222, to conduct surveillance on Parker's apartment – apartment number 2203. Police officers observed Parker's girlfriend drive up to the apartment complex in a white Dodge Avenger, exit her vehicle, and enter apartment 2203. Police officers

4

then heard the girlfriend tell someone that police officers were all over the place and were outside staring at her. A few minutes later, Parker exited the apartment and walked towards his girlfriend's car. Since the police officers were looking for a suspect that lived in apartment 2203 and Parker matched the general description of that suspect, the police officers detained him. After Parker told the onsite officers his name, the investigating officer who was back at the sheriff's office used an on-file photograph of Parker for the purpose of preparing a photo lineup. Bourassa and Smith then identified Parker during separate photo lineups.

Parker was arrested and transported to the sheriff's office. Meanwhile, police officers obtained and executed a search warrant for Parker's apartment. During the search, police officers found a loaded pistol and clothing similar to that described by the victim.

The investigating officer subsequently interviewed Parker at the sheriff's office. The officer read Parker the *Miranda* warnings, and Parker waived his rights and agreed to talk to the officer. Parker then admitted that he was the gunman during the armed robbery.

In several enumerations of error, Parker contends that the trial court erred in denying his motion to suppress his custodial statements, evidence found during a

search of his apartment, and his co-defendants' pre-trial identifications of him. Parker's arguments lack merit.

1. Parker first contends that the trial court erred in allowing the investigating officer to testify about another officer's custodial interview of Bourassa and Smith. Parker specifically argues that the hearsay evidence could not be used to prove the lawfulness of the State's actions and violated his right to confront witnesses. We discern no error.

"A defendant may seek to suppress evidence seized during a warrant search if the warrant was not supported by probable cause." (Footnote omitted.) *Shivers v. State*, 258 Ga. App. 253, 253-254 (573 SE2d 494) (2002). Similarly, in order for a warrantless arrest to be valid, police officers must have probable cause to believe the accused has committed or is committing a criminal act. *Devega v. State*, 286 Ga. 448, 451 (4) (b) (689 SE2d 293) (2010).

> It has long been recognized that hearsay is admissible in determining the existence of probable cause. Admission of hearsay for that purpose does not violate the constitutional right of a defendant to confront the accusing witnesses, because guilt or innocence is not the issue for determination. There is a great difference between what is required to prove guilt in a criminal case and what is required to show probable cause for arrest or search. A finding of probable cause may rest upon evidence which is not legally competent in a criminal trial.

6

(Citations and punctuation omitted.) *Banks v. State*, 277 Ga. 543, 544 (1) (592 SE2d 668) (2004). Consequently, the trial court did not err in admitting hearsay testimony at the suppression hearing, giving it such weight and credit it deemed proper. See *McDaniel v. State*, 263 Ga. App. 625, 627-628 (1) (588 SE2d 812) (2003).

2. Parker also contends the photographic identifications by his co-defendants should have been suppressed because his photograph was obtained as a result of and tainted by his illegal arrest. Parker argues that he was arrested when he exited his apartment and was confronted by police. We disagree.

It is well settled that a police officer

> may stop persons and detain them briefly, when the officer has a particularized and objective basis for suspecting the persons are involved in criminal activity. In doing so, the officer's action must be justified by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion, and the officer must have some basis from which the court can determine that the detention was neither arbitrary nor harassing. Detention beyond that . . . is an arrest, and, to be constitutional, such an arrest must be supported by probable cause.

(Citations, punctuation, and footnotes omitted.) *Galindo-Eriza v. State*, 306 Ga. App. 19, 22 (1) (701 SE2d 516) (2010). The test of whether a detention amounts to a custodial arrest depends upon whether a reasonable person in the suspect's position would have thought the detention would not be temporary. *Buford v. State*, 312 Ga.

7

App. 411, 412 (1) (718 SE2d 605) (2011). Since this determination is a mixed question of fact and law, we construe the evidence most favorably to uphold the trial court's findings and accept those findings unless they are clearly erroneous, but we independently apply the legal principles to those facts. Id.

Viewed in the light most favorable to the trial court's ruling, the evidence shows that when police officers made contact with Parker, they had a reasonable suspicion to believe he was the third suspect involved in the armed robbery. Notably, Bourassa and Smith gave incriminating statements that they were involved in the armed robbery and provided information regarding the physical description and apartment number (2203) of the third assailant (Parker). The officers observed Parker coming out of apartment 2203, and Parker matched the physical description provided by Bourassa and Smith. Additionally, police officers saw a woman drive up to the apartment complex in a white Dodge Avenger and enter apartment 2203, and those observations were consistent with information provided by the co-defendants. Consequently, the officers had a reasonable suspicion to detain Parker as they investigated whether he was involved in the robbery.

During this investigation, Parker provided his full name to the police officers, who relayed this information to the investigating officer. The investigating officer

8

then searched a police database and found a picture of Parker to prepare a photo lineup. Contrary to Parker's claims, although he was not free to leave, the evidence does not conclusively show that he was under arrest, as opposed to being detained, at the time he provided his name. Since the evidence did not show that Parker was handcuffed, placed in a patrol car, or otherwise physically restrained, the trial court was authorized to find that he was not under arrest at the time he provided his name to officers. See *Tune v. State*, 286 Ga. App. 32, 35 (1) (b) (648 SE2d 423) (2007) (holding that a temporary detention where defendant was not handcuffed or otherwise restrained did not constitute an arrest); *Harper v. State*, 243 Ga. App. 705, 706 (1) (534 SE2d 157) (2000) (noting that "not every detention is an arrest") (citation omitted). Consequently, the trial court did not err in denying his motion to suppress the photograph identifications.

3. Parker contends that the trial court erred in denying his motion to suppress evidence seized pursuant to his arrest, including his custodial statements, because police officers lacked probable cause to arrest him. We disagree.

Probable cause to arrest "exists if the arresting officer has knowledge and reasonably trustworthy information about facts and circumstances sufficient for a prudent person to believe the accused has committed an offense." (Citation and

9

punctuation omitted.) *Devega*, supra, 286 Ga. at 451 (4) (b). The facts necessary to establish probable cause for arrest are much less than those required to prove guilt beyond a reasonable doubt at trial, and the test for probable cause merely requires a probability that the suspect committed a crime under the totality of the circumstances. See *Armour v. State*, 315 Ga. App. 745, 746 (728 SE2d 270) (2012).

As described above, police officers had a reasonable suspicion to believe that Parker was involved in the armed robbery. Their suspicion developed into probable cause that Parker committed a crime when both Bourassa and Smith positively identified Parker as the third assailant during a photo lineup. Under the totality of the circumstances, police officers had the authority to arrest Parker. Therefore, the trial court did not err by denying his motion to suppress evidence seized as a result of his arrest. See *Alatise v. State*, 291 Ga. 428, 430-31 (3) (728 SE2d 592) (2012) (co-defendant's confession and incriminating statements, which were consistent with information gained from independent investigation, provided officers probable cause to conclude that defendant had committed a crime).

(d) Parker next contends that the trial court erred in denying his motion to suppress the physical evidence seized from his apartment, because the State never

introduced into evidence the search warrant or supporting affidavit. Again, we disagree.

Preliminarily, in Parker's motion to suppress, he never identified that one of the legal issues to be addressed was the existence of the search warrant. Consequently, Parker waived the issue. See *Young v. State*, 282 Ga. 735, 736-738 (653 SE2d 725) (2007) (defendant waived issue regarding existence of search warrant by not providing notice that this would be one of issues for the trial court to address).

Even if not waived, Parker's claim is belied by the record. The record shows that the search warrant and affidavit were filed on June 9, 2011, almost two weeks before Parker's hearing on his motion to suppress. Additionally, the trial court stated that it had reviewed the search warrant and affidavit, and Parker's attorney conceded at the suppression hearing that he had copies of the same. Since the subject materials were in the record and Parker had an opportunity to confront and cross-examine witnesses about the contents of the supporting affidavit, his claim affords no basis for reversal.[1] See *Bowman v. State*, 205 Ga. App. 347, 348 (422 SE2d 239) (1992); see also *Flint v. State*, 308 Ga. App. 532, 535 (2) (707 SE2d 498) (2011) (State met initial

---

[1] Parker does not otherwise challenge the lawfulness of the search and seizure conducted pursuant to the search warrant.

burden of proof where copies of affidavit and warrant were in the record and submitted to the trial court during the hearing). Compare *Sosebee v. State*, 303 Ga. App. 499, 501 (1) (693 SE2d 838) (2010) (where State failed to produce search warrant and police officer did not have personal knowledge of the warrant, the trial court erred in denying motion to suppress on ground that search was conducted without valid search warrant). Accordingly, the trial court did not err in denying Parker's motion to suppress.

*Judgment affirmed. Barnes, P. J., and Ray, J., concur.*