**SECOND DIVISION**
**ANDREWS, P. J.,**
**MILLER and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 20, 2015**

# In the Court of Appeals of Georgia

A15A1177. OWENS v. THE STATE.

ANDREWS, Presiding Judge.

Following a jury trial, Russell Lee Owens was convicted on one count of possession of a controlled substance, in violation of OCGA § 16-13-30 (a).[1] He unsuccessfully moved for a new trial, and argues on appeal that the trial court erred in denying his motion to suppress physical evidence, admitting similar transaction evidence, and excluding the testimony of a potential defense witness. We find no error and affirm.

---

[1] Owens was also convicted of a minor traffic violation and on one count of possession of a drug not kept in its original container (OCGA § 16-13-75 (a)), but the drug conviction merged into his conviction on possession of a controlled substance for sentencing purposes.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and the defendant no longer enjoying a presumption of innocence. *Preston v. State*, 300 Ga. App. 433 (685 SE2d 420) (2009). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

So construed, the evidence adduced at trial shows that just after 7:00 a.m. on the morning of August 25, 2008, a law enforcement officer observed Owens driving without an operational tag light and effected a stop of his vehicle. Knowing that Owen had been the subject of several "lookout" alerts within the police department precipitated by reports of his suspected drug and theft activity, the officer requested Owens's consent to search the vehicle while he awaited the return of Owens's license and insurance information. Owens consented to the search.

A second officer assisting in the search located a cigarette pack in the console of the passenger door that contained prescription pills, and a pill bottle containing 23

loose and 20 cellophane-wrapped prescription pills in a compartment located behind the driver's seat. The pills tested positive for hydrocodone.

Owens was subsequently arrested and indicted for unlawfully possessing a controlled substance. His trial counsel moved to suppress the physical evidence, arguing in part that the stop of Owens's vehicle was pretextual and unlawful because the officer failed to establish that Owens committed a traffic violation by failing to have his tag light illuminated. The trial court denied Owens's motion.

Owens's defense during the ensuing trial was that the pills were planted in his truck without his knowledge by a woman named Sheree Bannister, who he claimed was motivated to set him up by a desire to get favorable treatment in an unrelated criminal case pending against her. Owens testified that immediately prior to being stopped, Bannister had agreed to meet him at a nearby gas station in order to loan him $20, and she repeatedly attempted to give him the pills. He said that after refusing to accept the drugs, he went into the gas station to pay and that Bannister must have planted them in his truck at that time.

The defense called Bannister herself as a witness, but she invoked her Fifth Amendment right not to testify. Owens's ex-wife took the stand, however, and

3

testified that Bannister had confessed to her that she had placed the drugs in Owens's truck.

Owens attempted also to introduce the transcribed testimony of Bannister's aunt, who was questioned outside of the jury's presence due to her conflicting court obligations. The crux of the aunt's testimony was that "[Bannister] didn't tell me how she did it or anything herself, but she just told me that she did it, did do it." The aunt explained further, "[W]e were just standing and talking and . . . [Bannister] said 'all this stuff with Russell, yeah, I did it,' but she said, . . . 'I ain't worrying about it.' That's exactly what she said. She said, 'yeah, I did it.'" Because the witness never clarified what "it" was, however, the trial court excluded the testimony as "too indefinite."

The State introduced similar transaction evidence for the purpose of proving Owens's intent to possess the drugs. Specifically, the State presented evidence that approximately nine months prior to his arrest in the instant case, Owens was arrested in the same general vicinity for driving under the influence of alcohol or drugs. The resulting search of Owens's truck led to the discovery of a pill bottle containing nabumetone, a prescription medication used to treat pain and inflammation, which is

classified under Georgia law as a dangerous drug.[2] The nabumetone pills did not match the label on the container. Owens subsequently pled guilty to possession of a dangerous drug in violation of OCGA § 16-13-72.

The jury convicted Owens and this appeal follows.

1. Owens asserts that the trial court erred in denying his motion to suppress the physical evidence because the State failed to prove the officer's initial stop of his vehicle was lawful. Specifically, Owens contends that Georgia law requires only that a tag light be illuminated "whenever the headlights or auxiliary driving lights are lighted," see OCGA § 40-8-23 (d),[3] and that the State failed to elicit testimony from the officer during the suppression hearing that Owens's headlights were on or should have been on at the time he effected the stop. See OCGA § 40-8-20 ("Every vehicle upon a highway within this state at any time from a half-hour after sunset to a half-hour before sunrise . . . and at any other time when there is not sufficient

---

[2] See OCGA § 16-13-71 (b) (629.5).

[3] "Either a taillight or a separate light shall be so constructed and placed as to illuminate with a white light the rear registration plate and render it clearly legible from a distance of 50 feet to the rear. Any taillight or taillights, together with any separate light for illuminating the rear registration plate, shall be so wired as to be lighted whenever the headlights or auxiliary driving lights are lighted." OCGA § 40-8-23 (d).

visibility to render clearly discernible persons and vehicles on the highway at a distance of 500 feet ahead shall display lights, including headlights.").

On review from the denial of a motion to suppress, we construe the evidence in the light most favorable to the trial court's ruling and accept all findings on questions of fact and credibility unless they are clearly erroneous. See *Buford v. State*, 312 Ga. App. 411, 412 (718 SE2d 605) (2011). Moreover, "we consider all the evidence of record, including evidence introduced at trial." Id. at 411.

The officer testified at the suppression hearing that it was "dusky" when he stopped Owens's vehicle, which was determined at trial to be at 7:07 a.m. The parties stipulated that, by coincidence, sunrise occurred at 7:07 that morning. The officer further testified that there was only "a little bit of light out," and that the drivers of other vehicles were using their headlights. After viewing a video recording of the stop, the trial court explicitly held:

> [T]he other vehicles on the road had their headlights on. It appeared to be a situation in which the lighting was such that prudence would dictate that someone needed their headlights on or it would be a dangerous situation. So the officer had a right to stop the truck.

The video recording is not contained in the appellate record, and the trial court's finding that the visibility warranted the use of headlights (and thus taillights)

6

is consistent with the witness testimony. It follows that Owens has failed to meet his burden of proving that the trial court's factual findings were clearly erroneous or that the court erred in denying the motion to suppress on the ground that the stop was unlawful. See *Soilberry v. State*, 282 Ga. App. 161, 162 (1) (637 SE2d 861) (2006) (deferring to the trial court's factual finding that the officer observed a traffic violation and affirming the denial of appellant's motion to suppress); *Turner v. State of Georgia*, 265 Ga. App. 40, 41 (2) (592 SE2d 864) (2004) (same).

2. Owens argues that the trial court erred in admitting the similar transaction evidence. We disagree.

Before any evidence of an independent act or offense may be admitted, the trial court must conduct a hearing during which the State must make three affirmative showings:

> [f]irst, the State must demonstrate that it seeks to introduce such evidence for an appropriate purpose, such as illustrating appellant's identity, intent, course of conduct, and bent of mind;[4] second, the State must show sufficient evidence to establish that the accused committed

---

[4] We note in passing that Georgia's new evidence code, applicable to trials conducted after January 1, 2013, no longer permits the admission of similar transaction evidence for the purposes of proving course of conduct or bent of mind. See Ga. L. 2011, p. 99, § 101; OCGA § 24-4-404 (b).

7

the independent offense or act; third, the State must demonstrate a sufficient connection or similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter.

(Citation and punctuation omitted.) *Harris v. State*, 276 Ga. App. 234, 237 (2) (622 SE2d 905) (2005); see *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991); Uniform Superior Court Rule 31.3 (B). It is not necessary that the prior act be identical to the charged offense, and when considering whether the evidence is admissible, "the proper focus is on the similarities, not the differences, between the separate crime and the crime in question." (Citation and punctuation omitted.) *Pareja v. State*, 286 Ga. 117, 121 (686 SE2d 232) (2009); see *Drummond v. State*, 278 Ga. App. 631, 633 (1) (629 SE2d 543) (2006) ("[I]f the defendant is proven to be the perpetrator of another drug crime and the facts of that crime are sufficiently similar or connected to the facts of the crime charged, the separate crime will be admissible to prove identity, motive, plan, scheme, bent of mind, or course of conduct.") (citation and punctuation omitted).

Owens does not dispute that the similar transaction evidence was admitted for a proper purpose or that the prior crime was not sufficiently proven. Rather, he argues

8

that the independent act was not sufficiently similar to the instant crime to be probative of his guilt because of the differences in the drugs he possessed.

When assessing this issue, the trial court acknowledged that the critical question for the jury was whether Owens intended to possess the controlled substance. Noting that it considered significant "the similarity in the transportation of controlled substance[s] and dangerous drugs for which [Owens had] no legal prescription or right to possess," the court concluded that "[t]he fact that he has done so in the past in similar circumstances is admissible in evidence."

The trial court did not abuse its discretion in admitting the similar transaction evidence. Less than a year prior to the crime for which Owens was being tried, he had been stopped in the same general area, driving the same truck, and was in possession of prescription drugs for which he had no legal prescription or a properly labeled container. Particularly in light of Owens's defense that he was unaware that the pills were in his truck, evidence of the previous incident was admissible to show Owens's intent to possess the contraband regardless of the differences in the prescription pills themselves. See *Branch v. State*, 255 Ga. App. 596, 598 (565 SE2d 910) (2002) ("[T]here is no requirement that the drug allegedly being distributed or possessed in the indicted offense be the same drug distributed or possessed in the similar

9

transaction."); *Willis v. State*, 199 Ga. App. 658, 659 (1) (405 SE2d 739) (1991) (holding trial court did not err in allowing evidence of defendant's prior conviction on possession of marijuana with the intent to distribute in his trial for possession of cocaine with the intent to distribute); see also *Bailey v. State*, 259 Ga. App. 293, 297 (5) (576 SE2d 668) (2003).

3. Finally, Owens argues that the trial court erred in excluding the transcribed testimony of Bannister's aunt. Again, we disagree.

As a general rule, "[t]he exclusion of evidence on the ground of relevancy lies within the sound discretion of the trial court, whose decision will not be disturbed on appeal absent a clear abuse of discretion." (Punctuation and footnote omitted.) *Bryant v. State*, 246 Ga. App. 711, 713 (2) (541 SE2d 80) (2000). In its order denying Owens's motion for mistrial, the trial court explained that the aunt's failure to define "it" as related to Bannister's alleged admissions rendered the proposed testimony "vague and non-specific," and thus inadmissible because "it was not probative of any issue before the jury." We find no abuse of discretion in the trial court's decision to exclude the transcribed testimony. See *Dawson v. State*, 283 Ga. 315, 316-317 (2) (658 SE2d 755) (2008) (affirming the trial court's exclusion of proffered evidence implicating a third party because it did nothing more than "raise a conjectural

10

inference that another person committed the [crime]"); *Boatman v. State*, 272 Ga. 139, 141 (2) (527 SE2d 560) (2000) (holding that the trial court did not err in excluding evidence that "merely offered speculation or conjecture that the third party could have been involved in the crimes at issue"); *Johnson v. State*, 331 Ga. App. 134, 138 (770 SE2d 236) (2015) (affirming the trial court's exclusion of evidence that required the jury to speculate as to its significance).

*Judgment affirmed. Miller and Branch, JJ., concur*.